Marilyn WILLIAMS, on her own behalf, and on behalf of her minor children, Donna Williams and Edward Williams, Plaintiffs,

v.

Thomas N. CARROS, Director, Allegheny County Children and Youth Services; Cyril H. Wecht, Tom Foerster, William B. Hunt, Commissioners of Allegheny County; Carolyn Donahue, Senior Supervisor in Charge of Foster Care; Monica Allen, Supervisor; Judy Brant, Caseworker; Janice Kowaleski, Caseworker; Walter S. Cohen, Secretary, Pennsylvania Department of Public Welfare; Margaret Jean Sosnowski, Deputy Secretary, Office of Children, Youth and Families; DPW, Defendants.

Civ. A. No. 83–2337.

United States District Court, W.D. Pennsylvania.

Dec. 20, 1983.

Eileen Yacknin, Evalynn Welling, Richard S. Levine, Pittsburgh, Pa., for plaintiffs.

George M. Janocsko, James A. Esler, Thomas F. Halloran, Pittsburgh, Pa., for defendants.

## MEMORANDUM

ZIEGLER, District Judge.

### I. *History of Case*

■ This is a civil action based on 42 U.S.C. § 1983 which was filed in this court after many years of related litigation in state court. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343. Pending before the court are the motions of defendants to dismiss for want of subject matter jurisdiction. We hold that, while subject matter jurisdiction is extant, abstention is required because (a) the underlying dispute has been litigated in state court for over 6 years; (b) numerous hearings have been held and fur-

ther proceedings are scheduled; (c) many of the issues presented here have been addressed by the state court, and (d) plaintiff can and should raise the unresolved questions in the state court litigation so that resolution may be had within the context of ongoing custody proceedings.

Plaintiff, Marilyn Williams, age 23, is the mother of Donna, age 7; Edward, age 6; and Damon, age 3. In April 1977, plaintiff requested that Children and Youth Services of Allegheny County (CYS) provide temporary foster care for Donna. After a short time, the child was returned to her mother but plaintiff continued to encounter difficulties in the home. On March 30, 1978, plaintiff again requested that CYS provide assistance. The agency filed a dependency petition with the Juvenile Court of Allegheny County, Pennsylvania, and that court on May 23, 1978, ordered CYS to assume custody and place the children in temporary foster care.

Donna and Edward were placed in separate foster homes and the state court retained jurisdiction. The court ordered, for example, that CYS increase the visitations between the mother and children, with reunification as the goal, and further ordered on December 12, 1979 that Edward be reintroduced to plaintiff's custody within six weeks.

Thereafter plaintiff was the victim of an assault and the Juvenile Court ordered that Donna and Edward remain in their respective foster homes pending further review. The Superior Court of Pennsylvania reversed the order of January 30, 1980 and held that the trial court had placed undue emphasis on the assault as it related to plaintiff's fitness as a custodian. *In re Donna W.*, 284 Pa.Super. 338, 425 A.2d 1132, 1136 (1981). The case was remanded to the lower court to receive additional evidence and resolve with "dispatch" plaintiff's petition for return of her children. *Id.* 425 A.2d at 1138.

Following the order of January 30, 1980, and prior to the judgment of the Superior Court on February 13, 1981, plaintiff visited her children twice each month for one hour at the office of CYS. The visits were suspended however from August to October 1980 when plaintiff removed the children to her home in Washington County in violation of order of the trial court. Visitation resumed in October and continued until November 1982 on the same basis.

On November 19, 1982, the Juvenile Court suspended all visitation between plaintiff and Donna for three months based on the recommendation of a psychologist retained by CYS. The expert found that visitation was inimical to the best interests of the child because Donna had bonded to the foster parents and the visits were upsetting and counterproductive. A similar order was entered with respect to Edward on December 3, 1982.

Plaintiff appealed the order of the trial court relating to Donna, alleging procedural and substantive infirmities. No appeal was taken as to Edward. Plaintiff then discontinued the appeal before the Superior Court because she was dissatisfied with the lack of a briefing schedule. Brief at 36, n. 2. We note, however, that plaintiff's appeal from the trial court's finding of dependency is pending before the Superior Court and the parties have advised this court that additional proceedings are scheduled before the trial court. In the meantime however, plaintiff has not visited with her children for over one year.[1]

Marilyn Williams instituted the instant action seeking the following relief: (a) an injunction requiring that defendants institute immediate visitation between plaintiff and her children in a proper setting; (b) an injunction that defendants develop a plan to maximize visitation opportunities; (c) an injunction requiring defendants to develop a family assessment plan including rehabilitation services; (d) a judgment declaring that defendants restricted plaintiff's visitation and reunification rights in violation of the Constitution as well as federal and

---

1. Damon was born on October 30, 1980, and has resided with his mother since that time. His custody is not in dispute in the state court proceedings.

state laws; (e) a judgment declaring that defendants failed to provide adequate assessment of her needs and appropriate services; and (f) money damages.[2]

Finally, throughout these proceedings, and in state court, Donna and Edward have been represented by a child advocate who has opposed the relief sought by plaintiff, including removal from their present placement in foster homes.

## II. *Discussion*

*McTeague v. Sosnowski,* 617 F.2d 1016 (3d Cir.1980) counsels that a district court should proceed cautiously when the question of abstention arises in the context of a claim that governmental authorities have violated the constitutional and statutory rights of children and families. *Id.* at 1017. As a result, this court granted plaintiff's motion for expedited discovery, required document production and conducted a hearing of plaintiff's claim for preliminary injunctive relief. We are satisfied that the record is adequate for resolution of defendants' argument that *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) compels abstention.

■ In *Middlesex Ethics Comm. v. Garden State Bar Assoc.,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), the Supreme Court fashioned a three-prong test for resolution of abstention questions. The policies underlying *Younger* are met when (1) proceedings are ongoing in state court; (2) important state interests are implicated; and (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges. *Id.* at 432, 102 S.Ct. at 2521.

Here there can be no dispute that state court proceedings are ongoing. An appeal is pending before the Superior Court of Pennsylvania in which Marilyn Williams is challenging the trial court's finding of dependency. If the appellate court reverses the judgment, the case will be remanded for further hearings. If affirmed, the trial court must continue to monitor the status of the children, including the order suspending visitation for three months. In addition, a hearing is scheduled in the lower court relative to plaintiff's attempt to obtain expert evidence to support her position, as well as other matters.

Secondly, there is no denying that important state interests are implicated in this dispute, and in the state court proceedings. Preservation of the family, parental rights, custody, visitation, child welfare and the rights of children are matters of primary concern to state and local governments and traditionally they have been called upon to strike the delicate balance in these difficult areas, at least in the first instance.

The third prong of the *Middlesex* test requires that we determine whether Marilyn Williams has an adequate opportunity to raise her constitutional challenges in the ongoing state proceedings.[3] We hold that she does.

■ We begin by noting that regular and appropriate visits between Marilyn and her children, Complaint at ¶ 65, and regular and appropriate visits between the children, Complaint at ¶ 66, and the integrity of the Williams family, Complaint at ¶ 67, are fundamental liberty interests protected by the Constitution. *Santosky v. Kramer,* 455 U.S. 745, 752, 102 S.Ct. 1388, 1393, 71 L.Ed.2d 599 (1981); *Duchesne v. Sugarman,* 566 F.2d 817 (2d Cir.1977). The fact that a parent may be less than a positive influence on the family does not abrogate these interests. Thus, when a state moves to alter weakened family bonds, it must provide fundamentally fair procedures. *Id.* at 753–754; *Lassiter v. Dept. of Social Services,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).

The amendments to the Social Security Act, 42 U.S.C. §§ 620–628 and 670–676, and the regulations of the Pennsylvania Department of Public Welfare, 55 Pa.Code 3130.1, *et seq.,* cited by plaintiff, Complaint

---

2. Plaintiff has now limited her claim for injunctive relief to the requirement that CYS provides reunification services and family therapy.

3. As noted, although plaintiff has filed this action on her behalf and her children, the children are opposed to the relief requested.

at 22, represent legislative responses to the natural and constitutional law precepts discussed above. To be sure, they reaffirm and codify the substantive and procedural rights of plaintiffs. But, the central issue we must focus upon is whether Marilyn Williams has the opportunity to present these challenges in state court.

The questions concerning Marilyn's right to appropriate visitation, and the rights of Donna and Edward to visit their mother and each other, and the issue of reunification of the family, are addressed either directly or indirectly in the sensitive opinion of Judge Hoffman. *In re Donna W.*, 284 Pa.Super. 338, 425 A.2d 1132 (1981). While there is no citation to federal law, conceptionally the state law mirrors federal law and, more importantly, plaintiff can present her federal contentions in the ongoing state proceedings.[4]

The argument that Marilyn was denied procedural due process at the hearing of November 19, 1982, that is, lack notice and the opportunity to be heard, should have been presented to the Superior Court by way of appeal. Instead, plaintiff sought a stay and then when that was denied by the Supreme Court of Pennsylvania, she discontinued the appeal, choosing instead to pursue the instant action.

Finally, as plaintiff correctly notes, federal law requires CYS to adopt a "case plan" for Donna and Edward and a plan to insure that conditions are improved in the Williams' home to "facilitate return of the child to his own home or the permanent placement of the child ..." 42 U.S.C. § 675(1). A case review system is also required "to project a likely date by which the child may be returned to the home or placed for adoption or legal guardianship ..." 42 U.S.C. § 675(5)(A) and (B). Finally, the Act establishes time limits for periodic review to determine the future status of the child and the accommodation of parental rights. 42 U.S.C. § 675(5)(C).

The evidence of record establishes that a case plan has been prepared by CYS for Donna and Edward, and the numerous hearings by the state trial court exceed the periodic review requirements of federal law. To the extent that the case plans do not comply with federal law, plaintiff can present the deficiencies to the state trial judge and if relief is denied, an appeal may be pursued through the state appellate courts and ultimately to the Supreme Court of the United States.

We wish to note however that plaintiff's evidence that the case plans are somehow deficient is questionable at best because the case plan requirements of federal law have been addressed, as we have noted, within the context of state law by the Superior Court. In sum, we hold that plaintiff has had, and will continue to have, an adequate opportunity to present her federal constitutional and statutory challenges in the ongoing state proceedings, and we are confident that the state courts are fully competent to resolve these issues. We reject plaintiff's argument that any alleged delay has denied her an adequate forum, under the circumstances.

The concerns expressed by the Court of Appeals in *New Jersey—Phila. Presbytery v. New Jersey Bd. of Education*, 654 F.2d 868 (3d Cir.1981) are not present here. There the Court concluded that abstention was inappropriate because certain individuals were not parties to the state court proceedings and they had the right to assert independent constitutional interests in a separate federal action. *Id.* at 881; *see* 35 *Rutgers Law Review* 559 (1983). Here plaintiffs are parties in the state court proceedings, as evidenced by *In re Donna W.*, 284 Pa.Super. 338, 425 A.2d 1132 (1981). All defendants in this action are subject to the jurisdiction and orders that may be entered by the Court of Common Pleas of Allegheny County, Pennsylvania.

Also important is the fact that defendants Carros, Donahue, Allen, Brant, Ko-

---

**4.** The same reasoning obtains with regard to plaintiff's claim that CYS unilaterally terminated visitation, failed to resume visitation and modified the placement plan. If true, these matters can be addressed by the state trial court in a motion for contempt.

waleski and CYS are not only subject to the jurisdiction of the Court of Common Pleas, they are actually de facto parties before that court because they are supervising the Williams' children pursuant to the case plans. Full review is available as to them.

Defendants Wecht, Foerster and Hunt are nominal parties of course, and not relevant to the relief requested. Plaintiff's claim against the Commonwealth defendants has never been clearly articulated, either in the pleadings or during argument. There can be no claim that the Department of Public Welfare did not comply with the amendments to the Social Security Act because it did. *See* 55 Pa.Code 3130.1, *et seq.* Moreover, its duty to require certain acts by CYS and its employees, if one exists, can be effectively mandated by the state courts within the confines of the pending proceedings.

Plaintiff's final argument that to dismiss under *Younger* is tantamount to imposing an exhaustion requirement under 42 U.S.C. § 1983 misses the mark. As the Supreme Court has observed:

> By requiring exhaustion of state appellate remedies for the purposes of applying *Younger*, we in no way undermine *Monroe v. Pape*, 365 U.S. 167 [81 S.Ct. 473, 5 L.Ed.2d 492] (1967). There we held that one seeking redress under 42 U.S.C. § 1983 for a deprivation of federal rights need not first initiate state proceedings based on related state causes of action. 365 U.S. at 183 [81 S.Ct. at 482]. *Monroe v. Pape* had nothing to do with the problem presently before us, that of the deference to be accorded to state proceedings which already have been initiated and which afford a competent tribunal for the resolution of federal issues.

*Huffman v. Pursue, Ltd.,* 420 U.S. 592, 609, n. 21, 95 S.Ct. 1200, 1211, n. 21, 43 L.Ed.2d 482 (1974); *New Jersey v. Chesimard,* 555 F.2d 63, 67 (3d Cir.1977); *cf. Conover v. Montemuro,* 477 F.2d 1073 (3d Cir.1972).

In sum, we hold that (a) plaintiffs are involved in ongoing state proceedings involving the defendants of record; (b) those proceedings implicate important state familial interests; and (c) there is an adequate opportunity to raise all requirements of federal law within those proceedings.

A written order will follow granting the motions of defendants to dismiss based on the abstention principles of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).