**GLEN–GERY CORPORATION**

v.

**LOWER HEIDELBERG TOWNSHIP, et al.**

**Civ. A. No. 85–907.**

United States District Court, E.D. Pennsylvania.

April 25, 1985.

---

Louis B. Kupperman, Philadelphia, Pa., for plaintiff.

Richard P. McElroy, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Presently before me is defendants' motion to dismiss. For the reasons set forth below, this motion will be granted and plaintiff's complaint will be dismissed with prejudice.

*Background*

Plaintiff in this civil rights suit is a corporation engaged in the manufacturing of bricks. It owns a parcel of land in Lower Heidelberg Township ("Township"), Berks County, Pennsylvania, on which it operates a shale and clay quarry. This quarry is the only one of its kind in the Township.

Plaintiff has owned the land in question for quite some time and has used it for quarrying operations since 1959. In 1973 the Township revised its zoning ordinance and failed to provide for quarrying as a permitted use by right, special exception, or conditional use. Plaintiff continued to mine its property, however, as a prior nonconforming use.

In January 1982, the Township passed another zoning ordinance, the effect of which was to prohibit all quarrying activity in the Township south of Sweitzer Road which bisects plaintiff's property. Plaintiff and the Township are currently involved in litigation in the Court of Common Pleas of Berks County, Pennsylvania, regarding the validity of the 1982 ordinance and its application to plaintiff.

In its instant complaint, plaintiff alleges that defendants and others engaged in a conspiracy, the object of which was the destruction of plaintiff's legitimate business. The complaint further alleges that the ordinance was passed and enforced out of personal animus toward plaintiff. Glen-Gery claims that its rights under the due process and equal protection clauses of the fourteenth amendment have been violated and that its rights under the state constitution have also been violated. The complaint also includes a number of pendent state claims. Defendants have moved to dismiss the complaint[1] arguing that I

---

1. Because the motion to dismiss presents matters outside the pleadings, and I have relied on

should abstain from hearing the present controversy, that the defendants are immune from suit, and that plaintiff has failed to state a claim upon which relief can be granted.

*Discussion*

Defendants' principal contention in this motion is that I should abstain from exercising jurisdiction over the present suit. I agree.

Abstention is a judicially created doctrine through which federal courts decline to exercise their jurisdiction in order to prevent unnecessary friction between the federal and state governments. It is appropriate only "in the exceptional circumstances where the order to the parties to repair to state court would clearly serve an important countervailing interest." *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959). Consistent with its perception of abstention as a narrow exception to the general rule that the federal courts should exercise jurisdiction over cases properly before them, the Supreme Court has defined only a limited number of situations in which abstention is appropriate. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).

There are three general types of abstention, each motivated by a separate, distinct concern for comity. First, there is so-called *Younger* abstention under which a federal court will abstain from hearing a case when there is a pending state court criminal or quasi-criminal action. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Second, there is so-called *Pullman* abstention under which a federal court will abstain when there is an unsettled question of state law the disposition of which may obviate the need to reach a federal constitutional question. *See Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Third, there is so-called *Burford* abstention under which a federal court may abstain in order to avoid deciding an issue which would interfere with a state's attempt to establish or maintain a coherent state policy with respect to a matter of important state concern. *See Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Defendants rely on all three strands of the abstention doctrine. I will discuss each of these grounds for abstention in turn.

All parties agree that there are pending state court actions in the Court of Common Pleas of Berks County that arise from the same set of operative facts as the instant case. Defendants characterize one of them as a quasi-criminal action and note that the complaint seeks an injunction against "unlawful" imposition of penalties on plaintiff. This could be construed as a request to enjoin future or threatened criminal or quasi-criminal action in the state court. It is well settled, however, that a federal court cannot abstain merely because there is a threat of pending prosecution in the state court system. *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). In order for *Younger* to compel abstention, there must be a pending state action.

In order to fully evaluate defendants argument that *Younger* requires abstention, I must examine the nature of the pending state court proceedings, if any. It does appear that the Township served a "stop order" on plaintiff on October 27, 1983. The Township then filed an action in the Court of Common Pleas of Berks County seeking a declaration of its rights to enforce the ordinance. Thus, defendants

those materials, I will treat this motion as a motion for summary judgment under Fed.R. Civ.P. 56. *See* Fed.R.Civ.P. 12(b). Summary judgment may be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Inferences to be drawn from the underlying facts contained in the record must be viewed in the light most favorable to the party opposing the motion and doubts regarding the existence of a genuine issue of material fact are to be resolved against the moving party. *Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 403 (3d Cir.1981).

argue, there is a pending action that is at least quasi-criminal in nature.

*Younger* abstention is applicable in situations in which there are pending state court actions of a quasi-criminal nature. *See Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). In *Middlesex Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), the Supreme Court recognized that the same principles of comity and federalism that underlay abstention in *Younger* and its progeny, also militate in favor of abstention in situations in which the pending state action is not strictly criminal in nature. *Id.* at 432, 102 S.Ct. at 2521. Thus, where important state policies are implicated, and the pending action bears "a close relationship to" a criminal action in nature, abstention may be mandated. *Id.* *Middlesex Ethics* identified three factors which must be considered in the decision to abstain. First, there must be a pending state judicial proceeding. Second, the proceedings must implicate important state interests. Third, there must be an adequate opportunity to address the constitutional issues raised in the federal case in the state judicial proceedings. *Id.*

There can be no serious dispute that the first aspect of *Middlestate Ethics* is satisfied. There is currently pending a state judicial proceeding involving the same parties which arises from the same set of operative facts as the present case. Admittedly, the issues that are currently being adjudicated in the Berks County proceeding are not precisely the same as those presented in the present case. This fact is not, however, dispositive of defendants' argument. The fact remains that the Berks County proceeding is judicial in nature and that it arises from the same set of operative facts as the present federal case. *cf. Middlesex Ethics* (involving ongoing state bar disciplinary proceedings which satisfied the first criterion); *Williams v. Carros*, 576 F.Supp. 545, 547 (W.D.Pa.1983) (first criterion met when appeal pending in Superior Court of Pennsylvania).

The second aspect of the *Middlesex Ethics* is more troublesome. In order to satisfy this requirement, the case must implicate important state interests. Defendants have argued that this case is not "just a zoning case" and that it raises issues of unsettled state law. The focus is, however, not the issues raised in the present litigation, but the issues raised in the state court proceedings. Defendants argue forcefully that this case involves novel issues arising from the interaction of the Pennsylvania Surface Mining Conservation and Reclamation Act, 52 P.S. § 1396.1 *et seq.* ("SMCRA") and the Municipalities Planning Code, 53 P.S. § 10101 *et seq.* In a nutshell, defendants argue that plaintiff has contended in the state court proceedings in this case that SMCRA preempts the Township's ability to enact or enforce the ordinance in question as to plaintiff's activities because plaintiff has been granted a permit under SMCRA from the state Department of Environmental Resources. Plaintiff denies that this issue is presented in this case and presumably also argues, that it was not an issue in the state court proceedings. It is apparent, however, that this issue has been involved in the state proceedings at various points, and it seems likely from the issues in the underlying zoning dispute between the parties that this issue will remain in dispute.

In the proceedings before the Zoning Hearing Board, plaintiff did, in fact, place at issue the effect of the SMCRA on the municipality's ordinance. *See* Defendants' motion to dismiss, exhibit A, ¶ 9(d). The Zoning Board decision is currently on appeal to the state courts. In its answer and counterclaim to the defendants' action which seeks to enforce the "stop order" plaintiff once again stated that it had obtained a valid permit from the DER to perform its mining operations. Defendants' motion to dismiss, Exhibit B ¶ 38. It is unclear, however, whether this particular statement is anything more than a factual averment. The Township has also placed this issue before the state courts in its action to enforce the stop order. Defend-

ants' motion to dismiss, Exhibit F ¶ 13(b). Although this issue may have been placed into the state court controversy by the defendants, I do not think that the identity of the party creating the issue in the state court proceedings need concern me under *Middlesex Ethics*. In that case, neither party was responsible for the importance of the proceeding to state interests: it was the nature of the proceeding itself which implicated state interests. Based on the record before me, I have to conclude that the preemption issue was presented in the state court proceedings and that it does present an issue important enough to the interests of the Commonwealth of Pennsylvania to satisfy the second requirement under *Middlesex Ethics*.

In *Blue Cross & Blue Shield of Mich. v. Baerwaldt*, 726 F.2d 296, 299 (6th Cir. 1984), the Sixth Circuit affirmed a district court's decision to abstain under *Middlesex Ethics* where the case involved the important state interests surrounding insurance regulation. Like *Blue Cross*, the present case involves an area of vital state concern: the regulation of surface mining.

Similarly, in *Ciaffoni v. Supreme Court of Pennsylvania*, 550 F.Supp. 1246 (W.D. Pa.1982), *aff'd*, 723 F.2d 896 (3d Cir.1983), the plaintiff had filed a suit which alleged that she had been denied a fair hearing in a probate dispute due to the alleged biases and prejudices of various members of the state judiciary. The court dismissed the complaint. One ground for this decision was the court's determination that abstention under *Middlesex Ethics* was required. The court held that the concerns raised in the complaint—the administration of the state judiciary and the operation of the state's probate laws—implicated important state interests. *Id.* at 1250–51.

The last aspect of the *Middlesex Ethics* test is the requirement that the state courts provide plaintiff with an adequate opportunity to present all of the constitutional issues raised in the federal lawsuit. Plaintiff and defendants are presently locked in battle in the Common Pleas Court of Berks County. That is a court of general jurisdiction which is fully able to hear all constitutional claims that plaintiff may have. I will not presume that the state courts are unable to safeguard federal constitutional rights. *See Middlesex Ethics*, 457 U.S. at 431, 102 S.Ct. at 2521. I will therefore conclude that all three elements of *Middlesex Ethics* have been satisfied.

As *Middlesex Ethics* recognizes, however, there may still be reasons for a federal court to assert jurisdiction in a case in which all three elements are satisfied if there are "exceptional circumstances" dictating this result. *Id.* at 437, 102 S.Ct. at 2524. The court's reference here was to the circumstances in which a federal court should not abstain under *Younger*. *Id.* That case recognized that there are limited situations in which a federal court could enjoin even ongoing state court criminal prosecutions. Such situations included cases involving prosecution for bad faith, or harassment, or other exceptional circumstances. *Younger*, 401 U.S. at 54, 91 S.Ct. at 755. *cf. Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) (involving alleged use of criminal prosecutions to chill the first amendment rights of civil rights activists).

In the instant case, there are no allegations in plaintiff's complaint which rise to the level of those in *Dombrowski*. Read liberally, plaintiff alleges that the defendants enacted an ordinance in bad faith and then attempted to enforce it. The motive for this activity was not, as in *Dombrowski*, an attempt to prevent the exercise of first amendment rights, but rather, at most, a personal animus directed at plaintiff. I do not believe that this rises to the level required under *Younger* to mandate federal jurisdiction.

■ Moreover, I believe that abstention in this case is also appropriate under both *Pullman* and *Burford*.

As many courts have recognized, the various abstention doctrines tend to "overlap and mix together to form the basis for abstention in particular cases ... This is especially true in cases challenging in federal court state attempts to implement local

land use policy." *Kent Island Joint Venture v. Smith*, 452 F.Supp. 455, 461 (D.Md. 1978). "Land uses cases are not easily susceptible to categorization" into the three particular forms of abstention. *Hershey v. Township of Lower Makefield*, No. 84–3415, slip op. at 10 (E.D.Pa. Jan. 14, 1985). In the present case, however, I believe that it is clear that absention is appropriate under either *Pullman* or *Burford*.[2]

The primary requirement of the *Pullman* doctrine is that the federal case presents a constitutional question that hinges on an unsettled aspect of state law, which, if decided, could obviate the need to decide a constitutional issue. In the present case, defendants argue that the application of the SMCRA to the Municipalities Planning Code presents such an issue. In order to satisfy *Pullman*, the issue must not only be present in the case, but also must be unsettled. I have already concluded that the preemption issue has been presented to the state courts. I believe that plaintiff has asserted it in this case as well. In its complaint, plaintiff alleges:

> At all times material hereto, both prior and subsequent to December of 1979, the Township was aware and knew that plaintiff's quarrying operations were fully approved and permitted by the Pennsylvania Department of Environmental Resources ... and that plaintiff's quarrying operations were being conducted pursuant to, [state] regulations and supervision.

Complaint, ¶ 31. Thus, plaintiff has alleged that the state (and by implication not the locality) had the authority to regulate its quarrying activity.

Plaintiff argues that even if the preemption issue is presented in the instant lawsuit, it has been "settled" by the Pennsylvania Supreme Court's decision in *Miller & Son Paving, Inc. v. Wrightstown Twp.*, 499 Pa. 80, 451 A.2d 1002 (1982). In *Miller & Son*, the court construed sections 17 and 17.1 of the SMCRA[3] in attempting to determine their effect on a local zoning ordinance which imposed different setback requirements for surface mines than did the state surface mining regulations. The issue presented to the court in *Miller & Son* was not, however, the broad question of the effect of the SMCRA on all zoning ordinances impinging on surface mining, but rather the validity of one local ordinance in light of the SMCRA. I do not believe that in upholding one local ordinance which regulated the terms under which surface mining was to be conducted, and not whether it could be conducted at all, the court specifically addressed the manner in which local ordinances affecting mining are to be harmonized with statewide policy and law. The court took great pains to limit its discussion to the precise issue before it: the effect of SMCRA on local zoning ordinances which antedated its enactment. Thus, I believe that an important unsettled issue of state law is presented by this lawsuit which if resolved would obviate the need to reach the constitutional questions presented.

Moreover, the regulation of surface mining which is formalized in SMCRA bears a striking similarity to the regulation of oil and gas drilling at issue in *Burford*. The legislative intent in enacting SMCRA was to impose statewide regulation on an industry which has historically been the source of difficult environmental problems. The act was intended to help harmonize the

---

**2.** The *Kent Island* court, and others, have taken the interwoven nature of abstention decisions in this area and fashioned a hybrid abstention doctrine. I fail to see support for this approach in the prevailing Supreme Court cases and decline to adopt it here. *See Colorado River Water Conservation*, 424 U.S. at 813–14, 96 S.Ct. at 1244–45.

**3.** Section 17.1 provides:

> Except with respect to ordinances adopted pursuant to the act of July 31, 1968 (P.L. 805, No. 247), known as the "Pennsylvania Municipalities Planning Code," all local ordinances and enactments purporting to regulate surface mining are hereby superseded. The Commonwealth by this enactment hereby preempts the regulation of surface mining as herein defined.

52 P.S. § 1396.17a.

conflicting interests of protecting the environment and of producing coal and other minerals. *See* 52 P.S. § 1369.1. Such a purpose requires that the regulation be carried out at a statewide level. This purpose is even more manifest in the language of section 17.1 which clearly states the intention of the state to take over much, if not all, regulation of all phases of surface mining. This case involves more than traditionally local issues of land use control. It involves the relationship between a comprehensive set of statewide regulations and local regulation of land use. It would be improvident for this court to step into this area and to determine for the state precisely how comprehensive its system of state regulation is. I believe that this case involves an area the regulation of which "is of vital interest to the general public," *Burford*, 319 U.S. at 324, 63 S.Ct. at 1103, which requires abstention.

Plaintiff relies heavily on *Heritage Farms, Inc. v. Solebury Twp.*, 671 F.2d 743 (3d Cir.), *cert. denied*, 456 U.S. 990, 102 S.Ct. 2270, 73 L.Ed.2d 1285 (1982). I have concluded, however, that the present case is distinguishable from *Heritage Farms*. In that case the Third Circuit did face a case which has certain similarities to the instant case. Plaintiffs therein brought a civil rights action arising form a local zoning dispute. Defendants moved to dismiss on the grounds of abstention. The district court granted the motion. The Third Circuit reversed.

In its decision the Third Circuit stated that abstention was inappropriate in situations such as the one at issue there. Plaintiff therein had alleged a detailed conspiracy on the part of local legislators to use their position to destroy its business for personal economic gain. The court held that under the circumstances presented therein, abstention under either *Pullman* or *Burford* was inappropriate.[4]

In considering the applicability of *Pullman* abstention, the court noted that the

mere presence of a dispositive question of state law was not controlling and found that, in general, local land use law, although controlling, was not unsettled enough to warrant abstention. *Id.* at 747. Similarly, the court found *Burford* abstention inappropriate because land use is a *local* rather than a statewide concern and that there is therefore "no uniform state policy for land use." *Id.* at 748. The court further found that there was no question bearing on important state policies presented. *Id.* at 748–49 (citing *Colorado River Water Conservation*, 424 U.S. at 816, 96 S.Ct. at 1245).

Because I have concluded that the application of SMCRA to local zoning ordinances is an unsettled question of state law and because I have concluded that this issue is presented in this case, *Heritage Farms* does not control. *Heritage Farms* involved allegations of conspiracy in a typical zoning case where the only state law involved was the Municipalities Planning Code and the only question presented under that law was the validity of a zoning action taken by a township. The Third Circuit concluded that under those circumstances, abstention was improper. If the same set of facts were presented in the case before me, I would not hesitate but to agree with the Court of Appeals and deny the instant motion. It appears to me, however, that the present case is so different from *Heritage Farms* as to make the latter inapplicable here. I therefore hold that abstention is appropriate here where there exists a novel, unsettled issue of state law, and where the case involves a statewide regulatory scheme which is an important state concern.

In its complaint plaintiff has also asserted a number of pendent claims based on state law. Because I have decided to dismiss plaintiff's federal constitutional claims, I will decline to exercise jurisdiction over the pendent claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86

---

**4.** *Younger* abstention was not an issue considered by the *Heritage Farms* court. 671 F.2d

at 746–47.

S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *Broderick v. Ass'n of Hospital Serv. of Phila.*, 536 F.2d 1, 8 n. 25 (3d Cir.1976).

For the foregoing reasons, I will grant defendants' motion to dismiss.[5]

---

**5.** Because I have concluded that I must abstain in this case, I need not consider the remainder of defendants' arguments advanced in support of its motion to dismiss.

In addition to the pending motion to dismiss, defendants have filed a motion for a protective order. Because I have decided to grant their motion to dismiss, the motion for a protective order is now moot.