682 A.2d 1267

**KEN R., on Behalf of his daughter, C.R., Appellant,**

v.

**ARTHUR Z. and Mary Jane Z., Appellee.**

Supreme Court of Pennsylvania.

Argued Jan. 24, 1996.

Decided Oct. 4, 1996.

50

Daylin B. Leach, Allentown, for Ken R.

Elissa Griffith Waldron, Allentown, for Arthur Z.

Before FLAHERTY, C.J., and NIX, ZAPALLA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## *OPINION*

FLAHERTY, Chief Justice.

Appellant, Ken R., on behalf of his daughter, C.R., appeals from the order of the Superior Court affirming the order of the Court of Common Pleas of Lehigh County which found that Appellant did not have standing to sue for visitation privileges with her half-sisters. For the reasons that follow, we affirm.

C.R. is the daughter of Ken R. and Mary Jane Z. In 1981, Ken R. and Mary Jane Z. divorced, and Mary Jane Z. took custody of C.R. Subsequently, Mary Jane Z. married Arthur Z., and they had two daughters.

C.R. continued to live with Mary Jane Z., Arthur Z, and their two daughters until 1993. At that time, C.R. accused Arthur Z. of sexual molestation. Although Arthur Z. denied the accusation, the parties agreed upon a Protection from Abuse Order, and C.R. went to live with her father, Ken R.

Mary Jane Z. did not believe C.R.'s accusation, and the incident caused a great deal of discord in their relationship. As a result of the incident, Mary Jane Z. has refused to allow C.R. to see her two half-sisters.

In 1993, Ken R. filed suit on behalf of his daughter C.R. seeking visitation rights with her half-sisters. Mary Jane and Arthur Z. filed an Answer and New Matter which asserted, among other things, that C.R. did not have standing to bring such a visitation action.

The trial court agreed with Mary Jane and Arthur Z. and dismissed the complaint for visitation. *Ken R. ex rel. C.R. v. Arthur Z.*, No. 93–FC–1410 (C.P. Lehigh County Apr. 11,

1994). In so doing, it held that because siblings are not included in the statutory language governing custody and visitation, such rights could not be judicially extended to them. *Id.* at 2–4. The trial court relied on *Weber v. Weber,* 362 Pa.Super. 262, 524 A.2d 498 (1987), *appeal dismissed,* 517 Pa. 458, 538 A.2d 494 (1988), for the proposition that because of the fundamental right to rear one's children free from governmental intrusion, standing to interfere with a parent's right to custody is limited only to those individuals specifically allowed by statute. *Ken R.,* No. 93–FC–1410 at 3–4.

The Superior Court affirmed. *Ken R. ex rel. C.R. v. Arthur Z.,* 438 Pa.Super. 114, 651 A.2d 1119 (1994). It found that it was constrained to agree with the trial court and was bound by the decision in *Weber v. Weber,* 362 Pa.Super. 262, 524 A.2d 498 (1987), *appeal dismissed,* 517 Pa. 458, 538 A.2d 494 (1988). The Superior Court's decision was based on the conclusion that the legislature has not given siblings the statutory authority to interfere with the parents' decision not to allow sibling visitation and that there is no legal right to interfere in the absence of statutory authority. *Ken R.,* 438 Pa.Super. at 118, 651 A.2d at 1121. Thus, the Superior Court held that a sibling lacks standing to maintain a partial custody or visitation action against both parents of a minor sibling. *Id.*

█ This appeal followed, and we granted allocatur to determine whether a sibling has standing to seek court ordered visitation with a minor sibling, although not specifically authorized to do so by statute. For the reasons that follow, we are constrained to hold that a sibling does not have standing to seek court ordered visitation with a minor sibling.

Both the trial court and the Superior Court relied on *Weber v. Weber,* 362 Pa.Super. 262, 524 A.2d 498 (1987), *appeal dismissed,* 517 Pa. 458, 538 A.2d 494 (1988), wherein the Superior Court held that an adult sibling did not have standing to seek partial custody of her minor sister. In *Weber,* the adult sibling was unmarried and lived with an unmarried man in a residence separate from her parents and minor sister. Mrs. Weber did not approve of this living arrangement and,

therefore, did not allow the minor sister to visit with her adult sister. Based on the parents' right to raise their children as they see fit and the lack of statutory authority for a sibling to request court intervention, the court in *Weber* found that the sibling relationship failed to give rise to a legal right to seek partial custody. *Id.* at 264, 524 A.2d at 499.[1]

C.R. submits that this Court should not follow the analysis in *Weber, supra;* rather, this Court should adopt the reasoning of the Superior Court of New Jersey in *L. v. G.,* 203 N.J.Super. 385, 497 A.2d 215 (1985), wherein that court held that adult siblings have standing to seek visitation with their minor siblings, despite the fact that the New Jersey legislature had only afforded the privilege of visiting with minor children to grandparents. *Id.* at 393, 497 A.2d at 219 (citing N.J.S.A. 9:2–7.1). The court in *L. v. G.,* stated that "the right to visit with one's own brother or sister is equal to, if not greater than the right to visit with one's grandchildren." *Id.* at 395, 497 A.2d at 221. Thus, the New Jersey Superior Court found that siblings, when in the child's best interests, possess the inherent right to visit each other. *Id.* However, in light of our case law and the principles of statutory construction, we are constrained to find that siblings do not have standing to seek court ordered visitation with their siblings in Pennsylvania.

In order to have standing, a "party must (a) have a substantial interest in the subject-matter of the litigation; (b) the interest must be direct; and (c) the interest must be immediate and not a remote consequence." *S. Whitehall Tp. Police Service v. S. Whitehall Tp.,* 521 Pa. 82, 86, 555 A.2d 793,

1. In the case *sub judice,* the Superior Court noted that "[w]hile *Weber* dealt with a petition for partial custody and the present action is for visitation, the analysis is the same." *Ken R.,* 438 Pa.Super. at 118 n. 3, 651 A.2d at 1121 n. 3. We agree with this statement. Although the interference with the parental right is less in cases of visitation, *see Commonwealth ex rel. Zaffarano v. Genaro,* 500 Pa. 256, 455 A.2d 1180 (1983), the analysis in terms of standing for someone other than the natural parent is the same. *See, e.g., Jackson v. Garland,* 424 Pa.Super. 378, 622 A.2d 969 (1993); *Weber v. Weber,* 362 Pa.Super. 262, 524 A.2d 498 (1987), *appeal dismissed,* 517 Pa. 458, 538 A.2d 494 (1988); *Herron v. Seizak,* 321 Pa.Super. 466, 468 A.2d 803 (1983).

795 (1989) (quoting *Franklin Tp. v. Dep't of Environmental Resources,* 500 Pa. 1, 4, 452 A.2d 718, 719 (1982)); *see also Chester County Children and Youth Servs. v. Cunningham,* 540 Pa. 258, 268, 656 A.2d 1346, 1351–52 (1995) (Opinion in Support of Reversal).

> A "substantial" interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law. A "direct" interest requires a showing that the matter complained of caused harm to the party's interest. An "immediate" interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it and is shown where the interest the party seeks to protect is within the zone of interests sought to be protected by the statute or constitutional guarantee in question.

*S. Whitehall Township Police Service,* 521 Pa. at 86–87, 555 A.2d at 795 (citations omitted).

█ In this case, C.R. has a substantial interest in maintaining her relationship with her sisters. Clearly, as a sibling, C.R.'s interests in this matter far outweigh any interest of the citizenry in general. C.R. also has a direct interest. C.R. cannot maintain her relationship with her two half-sisters because of the actions of Mary Jane Z. Presently, her only means of maintaining a relationship with her two half-sisters is through the court system because Mary Jane Z. has forbidden all contact between C.R. and her two half-sisters. However, C.R. does not have an immediate interest and, therefore, does not have standing to seek court ordered visitation with her two half-siblings.

█ As stated above, an immediate interest is shown where the interest the party seeks to protect is within the zone of interests sought to be protected by the statute or constitutional guarantee in question. The General Assembly has declared the zone of interests it seeks to protect as follows:

> [I]t is the public policy of this Commonwealth, when in the best interest of the child, *to assure a reasonable and continuing contact of the child with both parents* after a

*separation or dissolution of the marriage and the sharing of the rights and responsibilities of child rearing by both parents and continuing contact of the child or children with grandparents when a parent is deceased, divorced or separated.*

23 Pa.C.S. § 5301. Applying the rules of statutory construction, the inclusion of a specific matter in a statute implies the exclusion of other matters. *Pane v. Commonwealth, Dep't of Highways*, 422 Pa. 489, 222 A.2d 913 (1966). There is no provision in the statute for protecting C.R.'s interest, that is maintaining her relationship with her sisters. Thus, C.R.'s interest does not fall within the zone of interests that the statute seeks to protect.[2]

■ The statute recognizes the right of parents to raise their children as they see fit without unwarranted governmental intrusion. This right has been recognized as one of our basic and fundamental rights. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). With this in mind, the legislature has allowed court interference with the parents' right to custody only in rare and exceptional circumstances. *See, e.g.*, 11 P.S. § 2208 (taking an abused child into custody); 23 P.S. § 2511 (grounds for involuntary termination of parental rights); 23 P.S. § 5301 (parents' custody and visitation rights in divorce proceeding); 23 P.S. §§ 5311–5313 (grandparent partial custody and visitation rights); 42 Pa.C.S. § 6301 (separating child from parents only when necessary for his welfare or in the interests of public safety).

C.R. argues that if courts can order children in custody cases to see a counselor, a psychologist, a reading tutor, or

---

**2.** C.R. also suggests that she has a constitutional right to see her siblings by citing *Williams v. Carros*, 576 F.Supp. 545 (W.D.Pa.1983), wherein the federal district judge in dicta refers to the right to visits between the children. *Id.* at 548. Brief for Appellant at 21–22. However, her argument is wholly inadequate. In support of her proposition, she cites *Williams*, and, without anymore argument or case law, C.R. requests that this Court "look carefully into the Federal Constitutional issue which *Williams* seems to suggest exists in this case." Brief for Appellant at 22. This argument is insufficient for this Court to find that the interest C.R. seeks to protect is within the zone of interests to be protected by the constitutional guarantee in question.

even a friend, they must be able to order siblings to see each other. She submits that if the courts are powerless to order sibling visitation, then there is a gaping hole in our child custody jurisprudence.

First, we must note that a judge can only order a child to see someone after it has been determined that the petitioning party has standing to seek the relief requested. Additionally, we are well aware that the application of the law of standing in this case may lead to an unfortunate result. However, we must be mindful that the legislature has made an explicit pronouncement on the subject of custody and visitation. Clearly, the legislature expressed a concern, when in the best interests of the child, for continuing contact of a child with both parents and, in certain circumstances, a child with grand-parents. *See* 23 Pa.C.S. § 5301–5314. There is nothing in the statute, however, that protects the interests of siblings to sue for visitation.

This does not lessen the well established importance this Court has placed on sibling relationships. *See, e.g., In re Davis,* 502 Pa. 110, 465 A.2d 614 (1983); *Albright v. Commonwealth ex rel. Fetters,* 491 Pa. 320, 421 A.2d 157 (1980). In this case, the Superior Court echoed the concerns raised by Judge Brosky in his concurring opinion in *Weber:*

> The relationships between siblings should be closely guarded and nurtured, since it is those relationships that will provide a harbor from which a child may find [his or] her way through the often turbulent waters of life. While it is true that parents may serve this function as well, we must realize that more often than not, parents predecease their children, creating the situation where siblings must comfort, support and depend upon each other. Even in less drastic circumstances, because siblings are closer in age and have shared life experiences, it would be quite natural for them to seek each other's counsel and companionship on routine matters as well.

*Ken R. ex rel. C.R. v. Arthur Z.,* 438 Pa.Super. at 118–19, 651 A.2d at 1121 (quoting *Weber v. Weber,* 362 Pa.Super. at 266, 524 A.2d at 500 (Brosky, J., concurring)). We wholeheartedly

agree with the sentiments expressed in the above passage. However, these concerns do not rise to the level of a legal interest where the legislature has enacted a specific statute addressing custody and visitation and has not included rights of children to seek court ordered visitation with siblings.

Therefore, we are constrained to hold that a sibling does not have standing to seek court ordered visitation with a minor sibling where not specifically authorized to do so by statute. We take this opportunity, as did the trial court and Superior Court in this case, to recommend that the legislature reexamine this area of the law and consider whether siblings should have a legal interest to sue for visitation.

Accordingly, we affirm the order of the Superior Court.

NIX, former C.J., did not participate in the decision of this case.

ZAPPALA, J., concurs in the result.

NEWMAN, J., files a dissenting opinion.

NEWMAN, Justice, dissenting.

Because I disagree with the Majority Opinion, which holds that a sibling lacks standing to seek visitation with his or her sibling(s), I dissent.

At the outset, I note that the concept of standing is not synonymous with a substantive "legal right" or a "cause of action." *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975). As this Court has recognized, courts frequently equate "standing" with the merits of the claim asserted. *Id.* at 200–201, 346 A.2d at 285. Here, I offer no opinion as to the ultimate resolution of this case. I would merely hold that C.R. be afforded the opportunity to be heard on the issue of whether visitation with her sisters serves the best interests of the children involved.

As stated by the Majority, in order to have standing, "a party must (a) have a substantial interest in the subject-matter of the litigation; (b) the interest must be direct; and (c) the interest must be immediate and not a remote conse-

quence." *South Whitehall Township Police Service v. South Whitehall Township,* 521 Pa. 82, 86, 555 A.2d 793, 795 (1989).

A "substantial" interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law. A "direct" interest requires a showing that the matter complained of caused harm to the party's interest. An "immediate" interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it and is shown where the interest the party seeks to protect is within the zone of interests sought to be protected by the statute or constitutional guarantee in question.

*Id.* at 86–87, 555 A.2d at 795 (citations omitted).

Applying the standard articulated in *South Whitehall,* here, the Majority holds that C.R. lacks an immediate interest to seek court ordered visitation. The Majority reasons that the statute, 23 Pa.C.S. § 5301 *et seq.,* does not provide for sibling visitation; therefore, C.R.'s interest is not within the zone of interests that the statute seeks to protect.

Contrary to the Majority's analysis, however, the "immediate interest" inquiry is not, in all cases, limited to the zone of interests protected by statutory or constitutional provisions. Instead, the immediate interest requirement encompasses the broader concept that the "protection of the type of interest asserted is among the policies underlying the *legal rule* relied upon by the person claiming to be 'aggrieved.'" *Upper Bucks County Vocational–Technical School Education Association v. Upper Bucks County Vocational–Technical School Joint Committee,* 504 Pa. 418, 423, 474 A.2d 1120, 1122 (1984)(quoting *William Penn Parking,* 464 Pa. at 198, 346 A.2d at 284)(emphasis added).

I do not interpret the absence of sibling visitation rights from the statute as determinative, here, because I do not believe that the statute is the sole focus of our inquiry. As a matter of statutory interpretation, in determining legislative intent, "an implication alone cannot be interpreted as abrogating existing law. The legislature must affirmatively repeal

existing law or specifically preempt accepted common law for prior law to be disregarded." *Metropolitan Property and Liability Insurance Company v. Insurance Commissioner*, 525 Pa. 306, 310, 580 A.2d 300, 302 (1990). Thus, common law rights that existed before the enactment of a statute continue to exist unless the expressed legislative intent is to extinguish those rights. *Schweitzer v. Rockwell International*, 402 Pa.Super. 34, 586 A.2d 383 (1990), *allocatur denied*, 529 Pa. 635, 600 A.2d 954 (1991).

The legislature has set forth the purpose of the statute, in a non-limiting manner, to assure continuing contact of a child with his parents and/or grandparents when in the best interest of the child. 23 Pa.C.S. § 5301. The statute contains no expressed intent to limit third party rights to grandparents. Thus, the codification of grandparent custody and visitation rights did not alter the state of the law, but merely codified the law that had evolved through various appellate decisions concerning the rights of grandparents to continuing contact with a child when in the child's best interest. *Hughes v. Hughes*, 316 Pa.Super. 505, 463 A.2d 478 (1983).[1] I do not believe that by codifying grandparent visitation rights, the legislature intended silently to extinguish the rights of all other third parties. Absent a contrary indication, therefore, I believe that the statute does not abrogate sibling visitation rights founded on the common law concern for the best interests of the children involved.

1. The *Hughes* court referred to the repealed Custody and Grandparent Visitation Act, Act of November 5, 1981, P.L. 322, No. 115, *as amended*, 23 P.S. § 1001 *et seq.*, effective January 5, 1982. That Act provided visitation rights to grandparents upon a finding that visitation is in the best interest of the child under the following circumstances: (1) when a parent is deceased; (2) when the parents' marriage is dissolved; and (3) when the child has resided with the grandparent for a period of twelve months or more. *Herron v. Seizak*, 321 Pa.Super. 466, 469, 468 A.2d at 803, 805 (1983).

The subsequently enacted statute, which is at issue here, similarly provides that, when in the best interest of the child, a grandparent may be granted reasonable visitation rights if (1) a parent of an unmarried child is deceased, 23 P.S. § 5311; (2) when the parents' marriage is dissolved or the parents are separated, 23 P.S. § 5312; and (3) if an unmarried child has resided with his grandparents (or great-grandparents) for twelve months or more, 23 P.S. § 5313.

As exemplified by the development of grandparent rights under our common law, Pennsylvania courts have long extended custody and visitation rights to third parties when in a child's best interest. *See, e.g., Albright v. Commonwealth ex rel. Fetters,* 491 Pa. 320, 421 A.2d 157 (1980); *Commonwealth ex rel. Williams v. Miller,* 254 Pa.Super. 227, 385 A.2d 992 (1978).

In *Albright,* a custody dispute between grandparents and a parent, we acknowledged the importance of maintaining the parental relationship. We, however, clarified that parenthood alone does not preclude the award of custody to a third party. A contrary view, we explained, would ignore the legislature's intention to permit the removal of a child from the custody of a parent, Juvenile Act, 42 Pa.C.S. § 6301 *et seq.* (1978); Child Protective Services Law, P.L. 438, *as amended,* 11 P.S. § 2201 *et seq.* (1975) [2] and the termination of parental rights, Adoption Act, Act of July 24, 1970, P.L. 620, No. 208, § 101, *as amended,* 1 P.S. § 101 *et seq.* (1971).[3] *Albright,* 491 Pa. at 325–26, 421 A.2d at 160. We adopted the standard that a parent has a *prima facie* right to custody, which will be defeated, however, if the third party demonstrates that the child's best interests will clearly be served by an award of custody to that party.

Likewise, in *Williams,* when Pennsylvania law on the visitation rights of grandparents was not clear, the Superior Court determined that a third party may establish a right to visitation by convincing the court that it is in the child's best interest to "give some time" to the third party. *Id.* at 230, 385 A.2d at 994. Thus, as *Albright* and *Williams* demonstrate, it is well established under common law that, in custody and visitation disputes between a parent and a third party, the cardinal concern is the best interest and permanent welfare of the child.

In determining the best interest of a child, a court must consider all factors that legitimately affect the child's physical,

2.   Repealed by 23 Pa.C.S. § 6301 *et seq.* (1990).

3.   Repealed by 23 Pa.C.S. § 2101 *et seq.* (1981).

emotional, intellectual and spiritual well-being. *Wiskoski v. Wiskoski*, 427 Pa.Super. 531, 629 A.2d 996 (1993), *allocatur denied*, 536 Pa. 646, 639 A.2d 33 (1994). Accordingly, "[i]t has always been a strong policy in our law that in the absence of compelling reasons to the contrary, siblings should be raised together whenever possible." *Albright*, 491 Pa. at 327, 421 A.2d at 160. *See also Wiskoski, Ferencak v. Moore*, 300 Pa.Super. 28, 445 A.2d 1282 (1982).[4] The importance of maintaining the sibling relationship is not diluted by the fact that the children involved are half brothers or sisters. *In re Davis*, 502 Pa. 110, 465 A.2d 614 (1983); *Wiskoski*. Courts also have recognized that an additional factor in determining the best interest of a child, is the child's preference. *E.A.L., Sr. v. L.J.W.*, 443 Pa.Super. 573, 662 A.2d 1109 (1995). There- fore, I conclude that a sibling, who desires to maintain a relationship with his or her sibling(s), has a sufficient legal interest to be heard on the issue of whether sibling visitation is in the best interest of the children involved. As this Court has previously stated, "a child's interests are best served when

**4.** Also, although I do not reach the issue, I note limited support for extending constitutional protection to the sibling relationship. Al- though the United States Supreme Court has not specifically addressed the issue, it has recognized that the Constitution protects certain highly personal relationships such as those that attend the creation and sustenance of a family. *Roberts v. United States Jaycees*, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984)(denying constitutional protec- tion to associational freedom of all-male Jaycees). The Court explained that "[f]amily relationships, by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences and beliefs but also distinctively personal aspects of one's life." *Id.* at 619– 20, 104 S.Ct. at 3250. *See also Moore v. East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977)(extending due process protection for personal choice in family life). Lower federal courts have extended *Roberts* and *Moore* to specifically provide constitutional protection for the sibling relationship. *See, e.g., Trujillo v. Board of County Commis- sioners*, 768 F.2d 1186 (10th Cir.1985)(in wrongful death action, recog- nizing liberty interest in associational freedom with sibling); *Rivera v. Marcus*, 696 F.2d 1016 (2d Cir.1982)(where state removed child from foster home, extending due process protection to custodial half-sister); *Aristotle P. v. Johnson*, 721 F.Supp. 1002 (N.D.Ill.1989)(extending due process protection to siblings separated in foster care). *But see, Bell v. Milwaukee*, 746 F.2d 1205 (7th Cir.1984)(denying constitutional protec- tion to sibling relationship in wrongful death action).

all those who demonstrate an interest in his or her welfare are allowed to be heard." *In re Adoption of Hess,* 530 Pa. 218, 227, 608 A.2d 10, 15 (1992).[5]

Resolution of this case will necessarily involve a conflict between the competing right of Mary Jane Z. and Arthur Z. to raise their family and C.R.'s interest in maintaining a relationship with her sisters. However, as in grandparent visitation disputes, the denial of visitation by a parent is not determinative. I again emphasize that here, as in all visitation matters, the best interest of the children involved is the primary concern.

5. I cannot conceive of a contrary result that would permit grandparents, but not brothers and sisters, to visit a child where it is in the child's best interest. In differentiating this case from the circumstances when grandparents' visitation rights arise, i.e, where the family unit has become detached or broken, Appellees emphasize that their family unit, that of Arthur Z. and Mary Jane Z. and their children, is intact. I note, however, that Appellant C.R.'s biological family is not intact: her parents are divorced, she is unemancipated and living with her father; she is estranged from her mother and is prohibited from visiting her sisters.