**Charles S. HANNA, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, PUBLIC SCHOOL EMPLOYES' RETIREMENT SYSTEM/BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 8, 1997.

Decided Oct. 22, 1997.

Charles S. Hanna, Allentown, for petitioner.

Lenann T. Miller, Assistant Counsel, Harrisburg, for respondent.

Before SMITH and PELLEGRINI, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

The issue presented in this case is whether the Public School Employes' Retirement Board (board) properly determined that Claimant Charles S. Hanna (Hanna) was not eligible to receive health insurance premium assistance payments under Section 8509 of the Public School Employees' Retirement Code (Retirement Code), 24 Pa.C.S. § 8509, because he was not enrolled in a board-approved health insurance program.

Hanna appeals from an order of the board adopting a hearing examiner's recommendation to deny Hanna's request to receive premium assistance payments. We affirm.

By the Act of August 5, 1991, P.L. 183, No. 23 (Act 23), the General Assembly amended the Retirement Code, 24 Pa.C.S. §§ 8101–8534, by adding Section 8509. Section 8509 established a health insurance premium assistance program to provide a supplemental monthly payment of up to $55 per month to help annuitants purchase basic health insurance. In order to meet Act 23's effective date of July 1, 1992, the Board temporarily approved the Public School Employes' Retirement System (PSERS) group health insurance program, Medicare Part B, Medicare supplemental programs, and all health insurance programs sponsored by Pennsylvania school districts for participation in the premium assistance program. In January 1993, Hanna, then employed as a teacher with the Allentown School District, received a newsletter entitled "PSERS Update—Special Report" from PSERS containing a list of the approved programs.

At some point after the passage of Act 23, a health insurance administrator for PSERS, Mark Schafer, conducted a study and prepared a report of the premium assistance program under Section 8509 and its effect on the PSERS group health insurance program. The report concluded that PSERS' health insurance program had become subject to what is known in the insurance industry as "adverse selection."[1] Based on this finding,

---

1. In his testimony before the hearing examiner, Mr. Schafer explained that adverse selection occurs when annuitants delay entering the PSERS health insurance program until they are older and have a greater need for comprehensive health insurance. Instead of enrolling in the PSERS health insurance program at retirement, annuitants enroll in non-PSERS programs offering fewer benefits at a lower cost. As the annuitants age and have a greater need for medical care, or as premiums increase in programs that employ age-based premiums, annuitants would then switch to the PSERS health insurance program, which had no enrollment restrictions and did not employ age-based premium increases. As a result, escalating insurance premiums—caused by an older population of annuitants making greater use of insurance benefits - reached a level at which some annuitants could

Mr. Schafer recommended, among other changes,[2] that the programs approved for participation in Act 23's premium assistance program be limited to the PSERS program and programs sponsored by the school districts.

By resolution passed at its meeting on June 25, 1993, the board adopted Mr. Schafer's recommendations and stated that the changes would go into effect on January 1, 1994. Two brochures containing information about the new changes were sent to all annuitants, including Hanna, prior to the January 1, 1994 effective date. The underwriter accepted for the new PSERS program was Capital Blue Cross/Pennsylvania Blue Shield.

 Hanna, who had just retired on June 18, 1993 with over 30 years of credited service, applied for premium assistance payments by form dated August 3, 1993. Hanna's election form indicated that he was enrolled in a health insurance program sponsored by the Pennsylvania Bar Association[3] and underwritten by Capital Blue Cross/Pennsylvania Blue Shield. By letter dated July 12, 1994, PSERS informed Hanna that he was not eligible to receive premium assistance payments because the Pennsylvania Bar Association program was not one of the programs approved by the board. The PSERS Appeals Committee also reviewed Hanna's application and denied his request. At Hanna's request, an administrative hearing was held where both sides presented evidence. By an opinion dated July 26, 1996, the hearing examiner recommended that the board deny Hanna's application. Hanna filed exceptions to the hearing examiner's decision. The board denied the exceptions and adopted the hearing

examiner's recommendation. Hanna appealed.[4]

Hanna contends that the board erred by denying his request for premium assistance payments because the requirement that an annuitant be enrolled in PSERS' Health Options Program, or in one of the school district programs, exceeds what is required of an annuitant under Section 8509 of the Retirement Code. Hanna asserts that the board has no statutory authority to base participation in the premium assistance program on whether or not an annuitant participates in a board-approved health insurance **program**. Rather, Hanna argues that once a health insurance **carrier** such as Capital Blue Cross/Pennsylvania Blue Shield is approved by the board to underwrite a program, then any annuitant who has health insurance through that same carrier is entitled to premium assistance payments. Because Capital Blue Cross/Pennsylvania Blue Shield is the carrier for both PSERS' Health Options Program and the Pennsylvania Bar Association's program, Hanna claims that Capital Blue Cross/Pennsylvania Blue Shield is an "approved" carrier under Section 8509. Thus, Hanna concludes that he met the statutory requirements of Section 8509 and he should receive premium assistance payments.

PSERS counters that the language of the statutory sections involved in the instant case[5] explicitly requires Hanna to be enrolled in a board-approved health insurance program in order to receive premium assistance payments. PSERS further argues that Section 8509 must be read in conjunction with Section 8102 so as not to preclude the board from carrying out its obligations to

---

not afford to participate in the PSERS health insurance program.

2. Mr. Schafer also recommended that the PSERS health insurance program be modified to offer multiple benefit packages with different premium levels. The Board's subsequent resolution made these changes and renamed the PSERS program the new "Health Options Program."

3. Hanna is also an attorney licensed to practice law in Pennsylvania.

4. Our review of final adjudications of administrative boards is limited to a determination of

whether the board committed an error of law, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Wyland v. Public School Employes' Retirement Board*, 669 A.2d 1098 (Pa. Cmwlth.1996). Because the board is the administrative body charged with the execution and application of the Retirement Code, we will not overturn its interpretation of the Retirement Code unless its construction is clearly erroneous. *Id.*

5. 24 Pa.C.S. § 8102 and § 8509.

PSERS' annuitants and their dependents. We agree.

The pertinent subsections of Section 8509 provide as follows:

**(b) Amount of premium assistance.**—Effective July 1, 1992, participating eligible annuitants shall receive premium assistance payments of $55 per month or the actual monthly premium, whichever is less. Such payments shall be made by the board to the participating eligible annuitants for their payment directly to their approved insurance carriers. Such payments may also be paid by the board, at the board's discretion, directly to the participating eligible annuitant's approved insurance carriers. The board shall have the right to verify the application and receipt of the payments by the participating eligible annuitants and their approved insurance carriers.

**(c) Participating eligible annuitants.**—An eligible annuitant may elect to participate in the health insurance premium assistance program by filing an election to be covered by a health insurance **carrier** approved by the board and to participate in the health insurance premium assistance program. Participation in the health insurance premium assistance program shall begin upon the effective date of the health insurance coverage provided by a health insurance carrier approved by the board, but in no event before the effective date of retirement.

24 Pa.C.S. § 8509(b)[6] and (c) (emphasis added). These two subsections of Section 8509 reveal that not all PSERS annuitants are entitled to receive premium assistance payments. Section 8509(b) provides that only "participating eligible annuitants" are permitted to receive monthly premium assistance payments. In order to become a "participating eligible annuitant," an "eligible an-

nuitant" must file an election form under Section 8509(c).

The parties in the instant case do not dispute the fact that Hanna is considered an "eligible annuitant" under the Retirement Code. What the parties dispute here is whether Hanna is considered a "participating eligible annuitant" under Section 8509. The phrase "participating eligible annuitant" is specifically defined in Section 8102 of the Retirement Code as follows:

**§ 8102. Definitions**

The following words and phrases when used in this part shall have, unless the context clearly indicates otherwise, the meanings given to them in this section:

. . . .

**"Participating eligible annuitants."** All eligible annuitants who are enrolled or elect to enroll in a health insurance **program** approved by the Public School Employes' Retirement Board.

24 Pa.C.S. § 8102 (emphasis added). The board contends that the language used by the General Assembly to define a "participating eligible annuitant" could not be any more explicit. Although Hanna is an eligible annuitant enrolled in a health insurance program, the board argues that Hanna is not "participating" as defined in Section 8102 because he is not enrolled in a board-approved health insurance "program." However, Hanna argues that he is a "participating eligible annuitant" under Section 8509 because Capital Blue Cross/Pennsylvania Blue Shield is an approved "carrier." According to Hanna, his eligibility for premium assistance is controlled by Section 8509 rather than Section 8102.

Under Section 1921(a) of the Statutory Construction Act of 1972 (Act), 1 Pa.C.S. § 1921(a), "every statute shall be construed,

---

**6.** We note that Section 8509(b), amended by the Act of April 29, 1994, P.L. 159, previously provided:

**(b) Amount of premium assistance.**—Effective July 1, 1992, participating eligible annuitants shall receive premium assistance payments of $55 per month or the actual monthly premium, whichever is less. Such payments will be made directly to the insurance carriers by the board.

Although the amendment occurred after Hanna's retirement on June 18, 1993 and after he applied for premium assistance payments on August 3, 1993, PSERS points out that such amendment is irrelevant to the disposition of Hanna's appeal. We agree because the issue in this case is Hanna's eligibility to receive premium assistance payments rather than the board's method of making such payments.

if possible, to give effect to all its provisions." Section 1921(b) of the Act further provides that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Moreover, Section 1922(2) of the Act requires us to interpret a statute with the presumption that the General Assembly intends the entire statute to be effective and certain. Applying these rules of statutory construction to the statutory sections involved in this case, we find that Sections 8102 and 8509 of the Retirement Code can be construed together to give effect to both provisions.

Section 8102's explicit language provides that if an eligible annuitant enrolls in an approved program, the annuitant becomes a "participating eligible annuitant." According to PSERS, the participating eligible annuitant can then elect to receive premium assistance payments under Section 8509(c). However, Hanna argues that Section 8509 also provides an eligible annuitant with the ability to "participate" in the premium assistance program by purchasing health insurance through an approved carrier. Once that health insurance is purchased through that approved carrier, Hanna claims that nothing else is statutorily required to receive premium assistance payments. We disagree with Hanna's interpretation of Sections 8102 and 8509.

■ Although Section 8509 specifically refers to the authority of the board to approve health insurance carriers, which may, in·turn, also provide certain health insurance programs approved by the board, it is illogical to conclude that the board's authority to approve insurance carriers under Section 8509 invalidates the board's authority to approve health insurance programs under Section 8102. To accept Hanna's interpretation of Section 8509 would require us to eliminate the definition of and any references to the phrase "participating eligible annuitants,"

which the General Assembly specifically defined in Section 8102. Such an interpretation flies in the face of the rules of statutory construction and requires us to read Section 8509 in a vacuum. Under Hanna's argument, once an insurance carrier is approved to underwrite a specific program, then any health insurance program administered by that carrier will be deemed "board-approved." Based on the express language of Sections 8102 and 8509, we find that the General Assembly did not intend such a result.[7]

■ As determined by the board, a more logical analysis construes the two sections together to give the board the power to approve both insurance carriers and health insurance programs.[8] Based on the board's interpretation, an eligible annuitant may participate in the premium assistance program if the annuitant has health insurance in a board-approved program that is underwritten by a board-approved carrier. In the instant case, the board never approved the health insurance program sponsored by the Pennsylvania Bar Association. If the General Assembly had intended to open participation in the premium assistance program to an eligible annuitant who chooses *any* health insurance program offered by an approved carrier, the General Assembly could have explicitly stated such a requirement and eliminated Section 8102. Thus, we adopt the board's interpretation of Sections 8102 and 8509.

■ Moreover, the board's interpretation of Sections 8102 and 8509 accounts for the deference that must be paid to the administrative agency charged with implementing a statutory scheme. As the administrative body charged with the duty of administering the Public School Employees' Retirement System, the board is entitled to substantial deference in carrying out its duty to its annuitants and their dependents. *Philadelphia Suburban Corporation v.*

---

7. We also disagree with Hanna's argument that relies specifically on the number of times the term "carrier" appears in Section 8509. The fact that the term "carrier" is repeated does not automatically lead to the conclusion that the General Assembly intended for the board to have the power to only approve carriers and not programs.

8. *See* 24 Pa.C.S. § 8505(i), which sets forth the board's numerous duties, including the authority to approve health insurance programs.

Board of Finance and Revenue, 535 Pa. 298, 635 A.2d 116 (1993). Also, an administrative agency has wide discretion when establishing rules, regulations and standards, and also in performing its administrative duties and functions. *Pennsylvania Industries for the Blind and Handicapped v. Department of General Services,* 116 Pa. Cmwlth. 264, 541 A.2d 1164 (1988) (citation omitted). Because the board is charged with execution and application of the Retirement Code, its interpretation should not be overturned unless it is clear that such construction is erroneous. *Laurito v. Public School Employees' Retirement Board,* 146 Pa.Cmwlth. 514, 606 A.2d 609 (1992). As already stated, we find the board's interpretation to be the most logical and we will not disturb the board's decision. As the board has continuously recognized throughout these proceedings, Hanna is still eligible to receive premium assistance payments if he chooses to enroll in one of the board-approved health insurance programs.

Hanna also makes an equitable estoppel argument in which he claims that he is still entitled to receive premium assistance payments because PSERS' personnel allegedly made misrepresentations upon which he relied in making his decision to retire. The doctrine of equitable estoppel requires the party with the burden of proof to show two essential elements: inducement and reliance. *Zitelli v. Dermatology Education and Research Foundation,* 534 Pa. 360, 633 A.2d 134 (1993). Questions of resolving conflicts in the evidence, witness credibility, and evidentiary weight are properly within the exclusive discretion of the fact-finding agency and are subject to only limited review by this Court. *Beardsley v. State Employes' Retirement Board,* 691 A.2d 1016 (Pa.Cmwlth.1997) (citation omitted). The only evidence Hanna offered in support of his estoppel claim was his own testimony and a personal affidavit, which was not admitted into evidence. Although Hanna's estoppel argument was supported by his testimony, the hearing examiner and the board were free to make a credibility judgment and reject such testimony.

Accordingly, we affirm the decision of the board.

## ORDER

AND NOW, this 22nd day of October, 1997, the order of the Public School Employes' Retirement Board, dated January 31, 1997, is hereby affirmed.