Camille "Bud" GEORGE, Petitioner,

v.

PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.

Commonwealth Court of Pennsylvania.

Argued April 14, 1999.

Decided Aug. 12, 1999.

**1284**

Daniel Ocko, Harrisburg, for petitioner.

Terrence J. Buda, Harrisburg, for respondent.

Before COLINS, President Judge, and DOYLE, J., McGINLEY, J., SMITH, J., FRIEDMAN, J., KELLEY, J., and LEADBETTER, J.

SMITH, Judge.

State Representative Camille "Bud" George (Petitioner) petitions for review of a Public Utility Commission (PUC) order providing final approval of a joint petition for full settlement to resolve issues raised by the restructuring plans of Metropolitan Edison Company (Met–Ed) and Pennsylvania Electric Company (Penelec) and the resulting litigation. Met–Ed and Penelec filed their restructuring plans with the PUC pursuant to the Electricity Generation Customer Choice and Competition Act (Competition Act), 66 Pa.C.S. §§ 2801–2812, to provide for the transition from monopoly-based regulation to a competitive generation market. The Competition Act became effective January 1, 1997.

Petitioner presents the following questions for this Court's review: whether the PUC committed an error of law and violated the rules of practice that it established for this proceeding by approving a settlement not unanimously approved by all parties to the settlement conference; whether the PUC committed an error of law in approving a settlement that allows for the forcible switching of up to 80 percent of the companies' customers to an alternative provider of last resort by June 1, 2003; whether the PUC committed an error of law by approving a settlement that does not provide for notice and evidentiary hearings prior to the approval of the disposition of a company's assets; and whether the PUC violated the constitutional rights of Petitioner and other ratepayers by allowing customers to receive untimely and misleading notice from the companies of the proposed settlement.

I

Between April 1, 1997 and September 30, 1997, all of Pennsylvania's electric distribution companies were required by the Competition Act to file a restructuring plan with the PUC to provide for the transition from monopoly-based regulation to a competitive generation market. These restructuring plans are subject to review and approval by the PUC after public hearings. *See* 66 Pa.C.S. § 2806(d) and (f). The restructuring plans of Met–Ed and Penelec were referred to an Administrative Law Judge (ALJ) for hearing and decision at the companies' request.

During the restructuring proceedings, Met–Ed and Penelec indicated their plans to sell their non-nuclear generating assets through auction. On June 30, 1998, the PUC issued separate opinions and orders on Met–Ed and Penelec's restructuring plans establishing their stranded costs and their transmission and distribution rates for 1999 ($975 million/1.273 cents/kwh and $858 million/2.007 cents/kwh, respectively). Both companies appealed to this Court.

During the pendency of the appellate actions, the parties to the restructuring proceeding agreed to participate in a settlement conference to reach a full settlement of all issues on appeal before this Court and of all issues in declaratory judgment proceedings filed by Met–Ed and Penelec in the United States District Court for the Eastern District of Pennsylvania. The conference was sponsored by the PUC and began on August 31, 1998. Before the settlement conference began, the conference participants signed a Pre–Settlement Agreement which provided among other things that no settlement agreement would be presented to the PUC unless all conference participants stated their agreement to the proposal, lack of opposition to the proposal or agreement to a different treatment of their concerns. The conference ended on September 23, 1998, and shortly afterwards the companies and various other parties representing divergent interests submitted a joint petition (Joint Petition) to the PUC with details of a settlement agreement reached among the signatories.[1] Petitioner participated in the settlement conference but is not one of the parties to the Joint Petition, and he asserts that the Joint Petition reflects a proposal resulting from the conference to which he voiced continued opposition.

On September 24, 1998, the PUC entered a tentative order approving the terms of the Joint Petition. In addition to service on the parties, Met–Ed and Penelec represented to the PUC that they would provide written notice of the proposed settlement by letter to their customers and would provide notice in their offices, on Internet web pages and by news release. Comments on the tentative order by parties to the proceedings and all other interested parties were to be filed with the PUC by October 9, 1998. Petitioner filed multiple objections to the tentative order, including an objection to the lateness and content of the notice provided by the companies. On October 20, 1998, the PUC entered a final order approving the terms of the Joint Petition.

■ Among other provisions, the Joint Petition guaranteed a 2.5 percent rate reduction for Met–Ed customers effective January 1, 1999 through December 31, 1999 and a 3 percent rate reduction for Penelec customers also effective January 1, 1999, when retail electric generation competition began in the companies' service territory. The Joint Petition further provided that Met–Ed and Penelec would recover a lesser amount of stranded costs than claimed before the Commission ($658.14 million and $332.16 million, respectively); that the companies' customers would have an opportunity to purchase electricity from alternative generation suppliers commencing on January 1, 1999; that transmission and distribution charges would be capped for an additional period of time; and that the companies would apply

1. The signatories include Met–Ed and Penelec; the Office of Consumer Advocate; the Office of Small Business Advocate; the Office of Trial Staff; the Met–Ed Industrial Users Group; the Penelec Industrial Customer Alliance; the Community Association of Pennsylvania; Conectiv Energy; Mid–Atlantic Power Supply Association; Locals 459 and 777 of the International Brotherhood of Electrical Workers; New Energy Ventures; Enron Power Marketing, Inc.; the Anthracite Region Independent Power Producers Association; the Pennsylvania Rural Electric Association, Allegheny Electric Cooperative, Inc; Solar Turbines, Inc.; BioEnergy Partners; Erie Power Partners, L.P.; AES Ironwood, Inc. and affiliates; York County Solid Waste and Refuse Authority; Inter Power/AhlCon Partners, L.P.; Homer City/Rubenstein Engineering, P.C.; the Environmentalists and other parties.

net proceeds from the sale of generation assets to offset stranded costs. The instant appeal followed in which Met–Ed, Penelec, Solar Turbines, Inc., Mid–Atlantic Power Supply Association and Erie Power Partners (collectively, Intervenors) have intervened.[2]

## II

■ The Court will first address Petitioner's argument that he and other ratepayers were deprived of their right to due process because the ratepayers did not receive timely and understandable notice of the PUC's action. Petitioner does not contend that he did not personally receive adequate notice; instead Petitioner asserts that he received numerous calls from constituents who received written notice too late to participate in the comment period and who found the written notice impossible to understand. The PUC and the Intervenors argue that Petitioner lacks standing as a legislator to litigate the adequacy of the notice afforded his constituents because the PUC's action in this matter does not diminish or interfere with any specific powers unique to Petitioner's function under the Pennsylvania Constitution as a state representative. The Court agrees. *See Wilt v. Beal,* 26 Pa.Cmwlth. 298, 363 A.2d 876 (1976) (legislator standing granted to challenge action on behalf of constituents which diminishes or interferes with specific constitutional powers unique to legislator's functions). Petitioner advances no argument explaining how the PUC's action diminishes or interferes with his constitutional powers as a state representative.

■ Petitioner does argue, however, that the failure to provide timely and understandable notice to all ratepayers injured him as an individual and therefore affords him standing to raise the issue. There are three requirements for a party to have standing to litigate an issue: the party must have a substantial interest in the subject matter of the litigation; the interest must be direct; and the interest must be immediate and not a remote consequence. *Ken R. ex rel. C.R. v. Arthur Z.,* 546 Pa. 49, 682 A.2d 1267 (1996).

A 'substantial' interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law. A 'direct' interest requires a showing that the matter complained of caused harm to the party's interest. An 'immediate' interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it and is shown where the interest the party seeks to protect is within the zone of interests sought to be protected by the statute or the constitutional guarantee in question.

*Id.,* 546 Pa. at 54, 682 A.2d at 1270 (quoting *South Whitehall Township Police Service v. South Whitehall Township,* 521 Pa. 82, 86–87, 555 A.2d 793, 795 (1989)). Both the immediacy and directness requirements primarily depend upon the causal relationship between the claimed injury and the action in question. *See Wm. Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975).

Assuming that Petitioner has a substantial personal interest in having all ratepayers be provided with adequate notice, his claim for standing on behalf of all ratepayers nevertheless fails for want of an adequate causal relationship. Petitioner has not established that additional ratepayers would have chosen to be involved in the proceedings if they had been afforded adequate notice or that their involvement would have affected the proceedings in a manner consistent with Petitioner's interests. Accordingly, Petitioner lacks standing to challenge the adequacy of the notice

---

**2.** This Court's review of a PUC decision is limited to determining whether the necessary findings are supported by substantial evidence and whether there was an error of law or a constitutional violation. *Yellow Cab Co. of Pittsburgh v. Pennsylvania Public Utility Commission,* 673 A.2d 1015 (Pa.Cmwlth.1996).

provided to other ratepayers. Because Petitioner is a Penelec customer and was a party to the settlement proceedings, the Court finds no barrier to his standing personally to challenge the PUC's order. The PUC does not disagree, although it would limit the application of any relief to Penelec only.

### III

■ Petitioner contends that the PUC violated the unanimity clause of the Pre–Settlement Agreement and the PUC's rules of practice[3] by approving the Joint Petition without consent or lack of opposition from all of the conference participants. The PUC responds that the Pre–Settlement Agreement expired prior to the execution of the Joint Petition, that the PUC was not a party to the Pre–Settlement Agreement, that the agreement was not submitted to the PUC for approval and that any breach of contract is more properly litigated in a civil lawsuit where a factual record may be developed. The PUC's staff convened the conference and acted as facilitators. Also, members of the PUC's Office of Trial Staff (OTS) were signatories. However, the PUC notes that the OTS functions as a separate prosecutorial entity by statute with the public interest as its client. Section 306(b) of the Public Utility Code, 66 Pa.C.S. 306(b).

The Court notes that the PUC's argument that it was not a party is supported by the very language of the Pre–Settlement Agreement which Petitioner asserts that the agency violated. Petitioner relies on the following language:

The Parties agree that no settlement agreement resulting from the Settlement Conference will be presented for approval to the [PUC] or to any court unless all Parties who participate in the Settlement Conference state, in writing, that they either agree to the proposed settlement agreement, do not oppose

such agreement, or agree to a different treatment of their concerns.

Petitioner's brief, p. 10. If the PUC were one of the parties contemplated by this language, then the language would entail an agreement by the PUC to forego presenting a proposal to itself, obviously an illogical result. Thus the Court concludes that the language contemplates the PUC as an entity separate from the parties to the Pre–Settlement Agreement. Moreover, the position advocated by Petitioner would empower any participant in the settlement conference to prohibit the PUC from implementing a proposal discussed at the conference regardless of how beneficial the proposal might be to the interests of this Commonwealth. It is not reasonable to believe that the PUC would have delegated such authority over the performance of its statutory duties.

■ Petitioner further contends that the PUC's final order violates the Competition Act by permitting the switching of retail customers' alternative provider of last resort (PLR) without the customers' consent. The Competition Act contains the following provision regarding PLR service:

It is in the public interest for the transmission and distribution of electricity to continue to be regulated as a natural monopoly subject to the jurisdiction and active supervision of the [PUC]. Electric distribution companies should continue to be the provider of last resort in order to ensure the availability of universal electric service in this Commonwealth unless another provider of last resort is approved by the [PUC].

66 Pa.C.S. § 2802(16). The PUC's final order establishes a competitive bidding process for PLR service to retail customers. The competitive bidding will be phased in with 20 percent of the companies' retail customers receiving service from an alternative PLR beginning on June 1, 2000 and an additional 20 percent on June 1 of each of the successive three

---

**3.** Petitioner cites no specific PUC or general rule violated by the agency's action.

years. Customers shall be chosen by random lottery. Petitioner's principal objection is that the process will switch the electric generation supplier of retail customers who elected to keep their electric distribution company as their supplier without the customers' oral or written consent.

Petitioner characterizes such unauthorized switching as "slamming," and he contends that it conflicts with the following provision of the Competition Act:

The [PUC] shall establish regulations to ensure that an electric distribution company does not change a customer's electricity supplier without direct oral confirmation from the customer of record or written evidence of the customer's consent to a change of supplier.

66 Pa.C.S. § 2807(d)(1). Petitioner asserts that the competitive bidding process conflicts with the legislative intent of the Competition Act, as embodied in the word "Choice" in its title. The PUC responds that it fulfilled its statutory obligation to ensure that an electric distribution company does not change a customer's electricity supplier without customer authorization and to ensure that customers enjoy a continuous source of generation supply by promulgating the regulations appearing at 52 Pa.Code §§ 57.171–57.179. The PUC asserts that the competitive bidding process does not represent unauthorized switching by an electric distribution company but rather the lawful exercise of the PUC's express authority to approve an alternative PLR.

■ As the administrative body charged with implementing the Competition Act, the PUC is entitled to substantial deference in the performance of its duties, and the PUC's interpretation of the Competition Act should not be overturned unless it is clear that such construction is erroneous. *Hanna v. Public School Employes' Retirement System/Board*, 701 A.2d 800 (Pa.Cmwlth.1997). The PUC's construction of the Competition Act is not clearly erroneous, and moreover the intro-

duction of competitive bidding in PLR selection conforms with the Competition Act's express declaration that "[c]ompetitive market forces are more effective than economic regulation in controlling the cost of generating electricity." 66 Pa.C.S. § 2802(5). The Court concludes that the competitive bidding process does not violate the Competition Act.

■ Finally, Petitioner maintains that the PUC violated the Competition Act by approving the disposition of the companies' assets without providing prior notice and evidentiary hearings. The final order permits Met–Ed and Penelec to divest certain assets subject, among other things, to a PUC audit to determine the companies' compliance with the auction process set forth in the Joint Petition and to a hearing to resolve material factual issues in dispute, subsequent to the divestiture. The PUC counters that the divestiture of the assets in question was announced during the restructuring process without objection from any party, and therefore a hearing would not be required since there were no material factual issues in dispute. *See Diamond Energy, Inc. v. Pennsylvania Public Utility Commission*, 653 A.2d 1360 (Pa. Cmwlth.1995). Petitioner concedes in his brief that he has no objection to the actual disposition of Met–Ed and Penelec's assets. Petitioner's brief, p. 18.

In view of the lack of opposition to the divestiture, the PUC concluded that the subsequent audit and hearing process satisfied the requirements of Section 2811(e)(2) of the Competition Act, 66 Pa. C.S. § 2811(e)(2), and that it would amply protect the interests of retail electric customers in ensuring that the assets are properly divested. The PUC's interpretation of the statute is not clearly erroneous, and it would be inappropriate for this Court to interfere with the exercise of discretion afforded by the General Assembly to the PUC in the performance of its statutory duties. *Hanna.* Accordingly, the Court concludes that the PUC did not commit an error of law or a violation of

Petitioner's constitutional rights, and it therefore affirms the order of the PUC.

### ORDER

AND NOW, this 12th day of August, 1999, the order of the Pennsylvania Public Utility Commission is affirmed.

Judge KELLEY dissents.

COLINS, President Judge, dissenting.

I believe that the notice given to petitioner and other ratepayers was both untimely and misleading. Therefore, I would vacate the order of the PUC and remand for further proceedings following proper notice.

I disagree with the majority's conclusion concerning the petitioner's lack of standing to challenge the adequacy of the notice in this unique proceeding.

Judge KELLEY joins in this Dissenting Opinion.