**MERCURY TRUCKING,
INC., Petitioner**

v.

**PENNSYLVANIA PUBLIC UTILITY
COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 2007.
Decided May 14, 2007.
Reargument Denied June 25, 2007.

William A. Gray, Pittsburgh, for petitioner.

Elizabeth Lion Januzzi, Asst. Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, COHN JUBELIRER, Judge and LEAVITT, Judge.

OPINION BY Judge PELLEGRINI.

Mercury Trucking, Inc. (Mercury) appeals from an order of the Pennsylvania Public Utility Commission (Commission) reversing the decision of the Administrative Law Judge (ALJ) sustaining Mercury's objection to its revenue assessment for the 2004 operating period and granting its petition for a refund.

Mercury is a Pennsylvania trucking company and considered a public utility under Section 102 of the Public Utility

Code (Code), 66 Pa.C.S. § 102. Pursuant to Section 510(a) of the Code, 66 Pa.C.S. § 510(a), all public utilities operating in Pennsylvania, including Mercury, are required to pay assessments levied by the Commission to cover its estimated costs of administering the Code. The Commission's assessment methodology is a two-step process. First, it must determine the amount to be assessed against all public utilities and, then, the Commission must allocate the cost among groups according to Section 510(b) of the Code, 66 Pa.C.S. § 510(b), which, in pertinent part, provides:

> **(b) Allocation of assessment.** On or before March 31 of each year, every public utility shall file with the commission a statement under oath showing its gross intrastate operating revenues for the preceding calendar year. **If any public utility shall fail to file such statement on or before March 31, the commission shall estimate such revenues, which estimate shall be *binding* upon the public utility for the purposes of this section.** (Bold and emphasis added.)

Mercury failed to timely file a statement of its operating revenues for the period from January 1, 2004, to December 31, 2004, with the Commission by March 31, 2005, because it had shrinking operations in 2005, reduced its staff, and its employee who was responsible for filing reports of this nature suffered from an illness and had not made the filing. When the Commission had not received the 2004 revenue report, after reminding Mercury that none had been filed, it issued Mercury a notice of assessment and a general assessment invoice dated August 17, 2005, for $32,310. The invoice calculated Mercury's revenues for the 2004 operation period based on its 2003 revenues plus a 12% increase.[1] Mercury paid the invoice, but alleging that the amount due was erroneous and excessive, it filed a timely objection to the assessment and a petition for a refund for $12,242.98.[2] The Law Bureau Prosecutory Staff (Prosecutory Staff), counsel for the Commission's Fiscal Office, filed a motion to dismiss Mercury's objection and petition, arguing that the Commission based its assessment on the estimate mandated by Section 510(b) of the Code, and this estimate was binding on Mercury. The matter was assigned to an ALJ.

Determining that the Commission's 2004 estimate was excessive, the ALJ sustained Mercury's objection to the assessment and granted it a refund of $12,242.98. Although the Prosecutory Staff argued that

1. Mercury's gross intrastate operating revenues for the 2004 operating period were $5,264,627 as reflected in the assessment report it later filed, compared to the $7,582,828 in gross intrastate operating revenues for the 2003 period. (Reproduced Record at 27a.)

2. *See* Section 510(c) of the Code, 66 Pa.C.S. § 510(c), which provides in relevant part:

   **(c) Notice, hearing and payment.** The commission shall give notice by registered or certified mail to each public utility of the amount lawfully charged against it under the provisions of this section, which amount shall be paid by the public utility within 30 days of receipt of such notice ... Within 15 days after receipt of such notice, the public utility against which such assessment has been made may file with the commission objections setting out in detail the grounds upon which the objector regards such assessment to be excessive, erroneous, unlawful or invalid. The commission, after notice to the objector, shall hold a hearing upon such objections. After such hearing, the commission shall record upon its minutes its findings on the objections and shall transmit to the objector, by registered or certified mail, notice of the amount, if any, charged against it in accordance with such findings, which amount or any installment thereof then due, shall be paid by the objector within ten days after receipt of notice of the findings of the commission with respect to such objection.

pursuant to Section 510(b) of the Code, the Commission's assessment was binding on a public utility which failed to timely file its statement of revenue, the ALJ reasoned that this argument created an inconsistency between Sections 510(b) and 510(c) of the Code because Section 510(b) mandated that the Commission's revenue estimates were binding, while Section 510(c) allowed a utility to challenge the assessments that had been generated by the Commission. The ALJ stated that the General Assembly did not intend such an unreasonable result. He also stated that the Prosecutory Staff's interpretation of Section 510(b) would "thwart the right of a utility to bring an action against the Commonwealth to recover the amount of the assessment the utility paid upon the ground that 'the assessment was excessive, erroneous, unlawful, or invalid,'" and would violate Mercury's due process right to a hearing to contest the Commission's revenue estimate. Concluding that Mercury was entitled to a hearing, the ALJ denied the Prosecutory Staff's motion to dismiss.

In its exceptions to the Commission from the ALJ's decision, the Prosecutory Staff contended that no inconsistency existed between Sections 510(b) and 510(c) of the Code because a public utility which failed to timely file a statement of revenue and was bound by a revenue estimate could still object to an assessment, but could not attack the Commission's revenue estimate by producing its actual revenue figures. It also argued that based on Section 1921(a) of the Statutory Construction Act, 1 Pa.C.S. § 1921(a), which provides that every statute shall be construed to give effect to all of its provisions, the ALJ's interpretation of Section 510(b) left that term "binding" without effect if a revenue estimate could be subsequently challenged. As a final contention, the Prosecutory Staff suggested that the ALJ's reasoning, if upheld, would impede the Commission's assessment process by creating a disincentive for utilities to timely file annual revenue reports.

Mercury responded to the Prosecutory Staff's exceptions contending that if the Pennsylvania General Assembly intended to eliminate the right of a public utility that had not timely filed its revenue report to challenge the Commission's estimated revenue figure, it would have indicated such in Section 510(c) of the Code. In addressing the Prosecutory Staff's argument that the ALJ's decision would impede the Commission's assessment process, Mercury noted that Section 510(b) continued to "bind" utilities in those situations where an objection was not filed within 15 days after receipt of its assessment invoice.

The Commission reversed the ALJ's decision, determining that the language of Section 510(b) of the Code contained no ambiguity which would lead to alternate interpretations or constructions, and that the section expressly stated that the failure of a utility to file its annual revenue report operated as a bar to it seeking to overturn the assessment. It also concluded that Sections 510(b) and 510(c) could be applied consistently as Section 510(c) permitted a utility to object to its general assessment, but Section 510(b) prevented a utility that had failed to timely file an annual revenue report from revisiting the revenue estimate once one has been generated by the Commission. Mercury appeals this order.[3]

---

3. Our scope of review of a Pennsylvania Public Utility Commission's decision is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, or whether findings of fact and conclusions of law are supported by substantial evidence. *UGI Utilities, Inc.-Gas Division v. Public Utility Commission*, 878 A.2d 186 (Pa.Cmwlth.2005).

This appeal is not properly before us, however, because a challenge to the Commission's assessment must be brought as an action at law. Section 510(d) of the Code, 66 Pa.C.S. § 510(d), provides:

No suit or proceeding shall be maintained in any court for the purpose of restraining or in anyway delaying the collection or payment of any assessment made under subsections (a), (b) and (c), but every public utility against which an assessment is made shall pay the same as provided in subsection (c). Any public utility making any such payment may, at any time within two years from the date of payment, sue the Commonwealth in an action at law to recover the amount paid, or any part thereof, upon the ground that the assessment was excessive, erroneous, unlawful, or invalid, in whole or in part, provided objections, as hereinbefore provided, were filed with the commission, and payment of the assessment was made under protest either as to all or part thereof. In any action for recovery of any payments made under this section, the claimant shall be entitled to raise every relevant issue of law, but the findings of fact made by the commission, pursuant to this section, shall be prima facie evidence of the facts therein stated. Any records, books, data, documents, and memoranda relating to the expenses of the commission shall be admissible in evidence in any court and shall be prima facie evidence of the truth of their contents. If it is finally determined in any such action that all or any part of the assessment for which payment was made under protest was excessive, erroneous, unlawful, or invalid, the commission shall make a refund to the claimant out of the appropriation specified in section 511 as directed by the court.

Accordingly, pursuant to 42 Pa.C.S. § 708,[4] we will transfer this matter to our original jurisdiction and direct the Commission to file a responsive pleading.

### ORDER

AND NOW, this *14th* day of *May*, 2007, the order of the Pennsylvania Public Utility Commission, dated May 22, 2006, is vacated and the Chief Clerk is directed to file this matter in our original jurisdiction and the Public Utility Commission is directed to file a responsive pleading within twenty (20) days of this order.

### CONCURRING AND DISSENTING OPINION BY Judge LEAVITT.

The majority renders a decision that is of critical significance to the operations of a Public Utility Commission, *i.e.*, in what sequence and in what forum a utility's challenge to its assessment should be litigated. It concludes that the single way for a utility to challenge its assessment is by initiating litigation against the Public Utility Commission in an original jurisdiction action before this Court.

Section 510(d) of the Public Utility Code, 42 Pa.C.S. § 510, says what it says, and I do not quarrel with the majority's description thereof. However, the majority does not address the important and ancillary

---

**4.** 42 Pa. C.S § 708(b) provides: "If an appeal is improvidently taken to a court under any provision of law from the determination of a government unit where the proper mode of relief is an action in the nature of equity, mandamus, prohibition, quo warranto or otherwise, this alone shall not be a ground for dismissal, but the papers whereon the appeal was taken shall be regarded and acted on as a complaint or other proper process commenced against the government unit or the persons for the time being conducting its affairs and as if filed at the time the appeal was taken."

statutory construction question of whether the Administrative Agency Law, 2 Pa.C.S. §§ 101–508, 701–704, augments the procedure established in Section 510 of the Public Utility Code. The majority decision implies, but does not state expressly, that the Administrative Agency Law is irrelevant to utility assessment challenges. Both parties proceeded below in the belief that Mercury Trucking's grievance could be resolved, in the first instance, by a formal administrative hearing before the Public Utility Commission governed by the Administrative Agency Law.

I realize this Court may question its jurisdiction *sua sponte.* However, I do not believe that this Court should announce a ground breaking decision, such as this one, without allowing the parties an opportunity to brief or argue the dispositive issues.

I believe we should order the parties to brief on these jurisdictional and statutory construction questions and have the matter argued *en banc.*