**UNITED PARCEL SERVICE,
INC., Petitioner**

v.

**PUBLIC UTILITY COMMISSION,
Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 7, 2007.
Decided Aug. 15, 2007.
Reargument Denied Oct. 3, 2007.

See also 574 Pa. 304, 830 A.2d 941.

Carl A. Solano and William M. Barnes, Philadelphia, for petitioner.

Lawrence F. Barth, Asst. Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and COLINS, Judge, and SMITH-RIBNER, Judge, and PELLEGRINI, Judge, and FRIEDMAN Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

United Parcel Service (UPS) seeks review of an interlocutory order of the Public Utility Commission (Commission) that was certified to this Court by the Commission in the belief that an immediate appeal would facilitate resolution of the entire case. Commission Order of July 20, 2006, at p. 10. UPS contends that the Commission does not have the authority to group all common carriers into one utility group

for assessment purposes under the Public Utility Code,[1] as the Commission held. Rather, UPS contends that utility groupings can be established only after an evidentiary hearing is conducted or a regulation is adopted.

The background and procedural history of this case is as follows. Public utilities, such as UPS, pay assessments to fund the Commission's costs of administering the Public Utility Code. UPS filed objections to its assessments for fiscal years 2002–03, 2003–04, 2004–05 and 2005–06, asserting that the Commission's method for allocating assessments among the various public utilities was inappropriate under Section 510(b) of the Public Utility Code.[2] Specifically, UPS has asserted that the Commission has not properly identified "each group of utilities furnishing the same kind of service" for the purpose of allocating the Commission's expenses to regulate that group of utilities. 66 Pa.C.S. § 510(b)(1).

The question of how to allocate assessments among utilities has been a matter of previous litigation. UPS objected to its fiscal year assessments for 1997–98, 1998–99 and 1999–2000. A brief discussion of that prior litigation will assist in understanding the issues raised in this appeal.

The Federal Aviation Administration Authorization Act of 1994, 49 U.S.C. § 14501(c), effective January 1, 1995, substantially deregulated certain categories of motor carrier transportation from state regulatory authority. In response to the deregulation act, the Commission created two different categories of motor carriers. Those carriers still subject to extensive regulation were called "motor common carriers" and those to which the substantial deregulation applied were called "motor carriers of property." UPS was classified as a "motor carrier of property." After 1994, the Commission determined that the groups of utilities "furnishing the same kind of service" fell into the following 11 utility groups: Aircraft; Boats and Ferries; Electric; Gas; Motor Carriers of Property; Motor Common Carriers; Pipe-

1. 66 Pa.C.S. §§ 101–3316.

2. It provides:

(b) Allocation of assessment.—On or before March 31 of each year, every public utility shall file with the commission a statement under oath showing its gross intrastate operating revenues for the preceding calendar year. If any public utility shall fail to file such statement on or before March 31, the commission shall estimate such revenues, which estimate shall be binding upon the public utility for the purposes of this section. For each fiscal year, the allocation shall be made as follows:

(1) *The commission shall determine* for the preceding calendar year *the amount of its expenditures directly attributable to the regulation of each group of utilities furnishing the same kind of service, and debit the amount so determined to such group.* The commission may, for purposes of the assessment, deem utilities rendering water, sewer or water and sewer service, as de-

fined in the definition of "public utility" in section 102 (relating to definitions), as a utility group.

(2) *The commission shall also determine* for the preceding calendar year *the balance of its expenditures, not debited as aforesaid, and allocate such balance to each group* in the proportion which the gross intrastate operating revenues of such group for that year bear to the gross intrastate operating revenues of all groups for that year.

(3) The commission shall then allocate the total assessment prescribed by subsection (a) to each group in the proportion which the sum of the debits made to it bears to the sum of the debits made to all groups.

(4) Each public utility within a group shall then be assessed for and shall pay to the commission such proportion of the amount allocated to its group as the gross intrastate operating revenues of the public utility for the preceding calendar year bear to the total gross intrastate operating revenues of its group for that year.

66 Pa.C.S. § 510(b) (emphasis added).

lines; Railroads; Steam Heat; Telephone and Telegraph; and Water/Sewer.

UPS challenged its assessments for fiscal years 1997–98, 1998–99 and 1999–2000. It argued that with deregulation, UPS demanded much less Commission time and attention. Accordingly, direct expenses attributable to the regulation of motor carriers of property under Section 510(b)(1) decreased. This resulted in an excessive assessment for UPS, a motor carrier of property. UPS also contended that the Commission's allocation of indirect expenses under Section 510(b)(2) had resulted in an excessive assessment. UPS was ultimately successful in its litigation on this point. Nevertheless, our Supreme Court specifically stated as follows:

> Given the limited scope of these proceedings, our determination here pertains solely to assessments to UPS during the periods under review [1997 to 2000]; *we offer no opinion concerning assessment methodology* that may be available to the Commission within the confines of the guiding statute *on a prospective basis.*

*United Parcel Service, Inc. v. Pennsylvania Public Utility Commission,* 574 Pa. 304, 317 n. 15, 830 A.2d 941, 949 n. 15 (2003) (emphasis added).

Thereafter, the Commission changed its overall utility groupings for assessment purposes, reducing the number of groups by combining all groups related to transportation into a single group providing the same kind of service. The Commission combined aircraft, boats and ferries, motor carriers of property, motor common carriers, and railroads into a single "common carrier" transportation group for purposes of both Section 510(b)(1) and Section 510(b)(2).

UPS then filed objections to its assessments for 2002–03, 2003–04, 2004–05, and 2005–06, prepared under this new method-

ology, contending that the Commission's assessments on UPS for those years were too high. The matter was assigned to an administrative law judge (ALJ).

The Commission's Fiscal Office moved to dismiss UPS's objections, arguing that UPS's challenge to the Commission's application of the Section 510 formula was meritless as a matter of law. The ALJ denied the motion, holding that the Fiscal Office was prematurely seeking summary judgment when a full factual record was needed to resolve UPS's issue. The Fiscal Office then filed a "petition for interlocutory review and answer to material question" with the Commission, requesting interlocutory review and answers to the following questions:

> 1. Does the Commission have the authority under the Public Utility Code to group all common carriers in one utility group for assessment purposes?
>
> 2. Can the Commission establish utility groups for assessment purposes without holding hearings or using the rulemaking process?
>
> 3. Can a utility assert a valid "unreasonably-high-assessment" claim if the Commission has correctly applied its assessment formula to that utility?

UPS Brief, Appendix A, pp. 1–2.

The Commission allowed interlocutory review and issued an opinion and order regarding the questions on May 22, 2006. The Commission answered the first two questions in the affirmative. The Commission determined that the decision to group all common carriers into one utility group for assessment purposes was consistent with a plain reading of the Public Utility Code. The new grouping expressed an interpretation of the Public Utility Code; accordingly, the adoption of a regulation was not the necessary prerequisite to implementing a new assessment methodolo-

gy. The Commission also answered the third question in the affirmative, determining that

> the statutory scheme of Section 510 of the [Public Utility] Code expressly contemplates the opportunity for hearing and the development of a record of all points of error on which the utility/claimant would rely in order to establish its opposition to the reasonableness of an assessment.

Commission Order of May 19, 2005, at 18. Noting that there were questions of disputed fact in this case, such as UPS's claim of bad faith and improper calculations, the Commission "returned [the matter] to the Office of Administrative Law Judge for such further proceedings as may be necessary." *Id.* at 20.

UPS then requested the Commission to certify its interlocutory order for immediate appeal to this Court pursuant to 52 Pa.Code § 5.633.[3] The Commission entered an opinion and order on June 27, 2006, granting UPS's motion, certifying for appeal the following issues: (1) the Commission's authority under the Public Utili-

ty Code to group all common carriers in one utility group for assessment purposes and (2) the Commission's authority to establish utility groups for assessment purposes in the absence of evidentiary hearings or formal rulemaking. In addition, the Commission stayed the proceedings before the ALJ pending resolution of the interlocutory appeal. On July 20, 2006, the Commission denied the Fiscal Office's petition for reconsideration, rejecting the Fiscal Office's contention that an appeal to this Court is inappropriate and that matters concerning assessments must be brought in this Court as original jurisdiction actions.[4] The Commission explained that it has not yet decided "the ultimate question of the propriety of the assessment amount levied against UPS." Opinion and Order of July 20, 2006, at 12. UPS filed a petition for permission to appeal an interlocutory order with this Court, and by order dated July 24, 2006, we allowed the appeal.[5]

On appeal,[6] UPS presents two issues. First, UPS argues that the Com-

---

**3.** 52 Pa.Code § 5.633 provides in relevant part:

(a) When the Commission has made an order which is not a final order, a party may by motion request that the Commission find, and include the findings in the order by amendment, that the order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal to Commonwealth Court from the order may materially advance the ultimate termination of the matter.

This section corresponds with 42 Pa.C.S. § 702(b), which provides as follows:

(b) INTERLOCUTORY APPEALS BY PERMISSION.—When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for

difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

**4.** The Commission also granted in part UPS's petition for clarification and changed language in its previous order to erase any doubt that UPS's motion to certify the interlocutory order for appeal was granted.

**5.** Pa. R.A.P. 312 and 1311 authorize interlocutory appeals by permission.

**6.** This Court's review of a Public Utility Commission decision is limited to determining whether the necessary findings are supported by substantial evidence and whether there was an error of law or a constitutional violation. *George v. Pennsylvania Public Utility*

mission lacked authority to change the utility groups because it failed to conduct a formal rulemaking or other proceeding to implement the change, or to engage in any factfinding in advance of making the change. Second, UPS argues that the Commission's regrouping of utilities does not satisfy the requirement of Section 510(b)(1) of the Public Utility Code that groups combined for assessment purposes must furnish the same kind of service.

■ We do not reach those issues because this appeal was improvidently granted. In *Mercury Trucking, Inc. v. Pennsylvania Public Utility Commission*, 923 A.2d 1244 (Pa.Cmwlth.2007), we held that a challenge to the Commission's decision on an assessment "must be brought as an action at law" in our original jurisdiction. *Id.* at 1247. We concluded that there is no

appellate review of a Commission decision rendered as a result of a hearing conducted under Section 510(c) of the Public Utility Code.[7] *Id.* Here, the objections of UPS are in the middle of a hearing being conducted by the Commission pursuant to Section 510(c) of the Public Utility Code, and under *Mercury Trucking* the outcome of that hearing is not subject to appellate review. *A fortiori*, there can be no appellate review of interlocutory orders entered in the course of a Section 510(c) hearing.[8] UPS must make the payment of the assessment ordered at the outcome of that Section 510(c) hearing and then seek to recover that payment by filing an original jurisdiction action with this Court, asserting that its assessment was "excessive, erroneous, unlawful, or invalid, in whole or in part...." 66 Pa.C.S. § 510(d).[9]

*Commission*, 735 A.2d 1282, 1286 n. 2 (Pa. Cmwlth.1999).

7. Section 510(c) provides in relevant part as follows:

(c) Notice, hearing and payment.—The commission shall give notice by registered or certified mail to each public utility of the amount lawfully charged against it under the provisions of this section, which amount shall be paid by the public utility within 30 days of receipt of such notice, unless the commission specifies on the notices sent to all public utilities an installment plan of payment.... Within 15 days after receipt of such notice, the public utility against which such assessment has been made may file with the commission objections setting out in detail the grounds upon which the objector regards such assessment to be excessive, erroneous, unlawful or invalid. The commission, after notice to the objector, shall hold a hearing upon such objections. After such hearing, the commission shall record upon its minutes its findings on the objections and shall transmit to the objector, by registered or certified mail, notice of the amount, if any, charged against it in accordance with such findings, which amount or any installment thereof then due, shall be paid by the objec-

tor within ten days after receipt of notice of the findings of the commission with respect to such objections.

66 Pa.C.S. § 510(c).

8. We note that when we granted UPS permission to appeal in this case, *Mercury Trucking* had not yet been filed.

9. Section 510(d) provides:

(d) Suits by public utilities.—No suit or proceeding shall be maintained in any court for the purpose of restraining or in anywise delaying the collection or payment of any assessment made under subsections (a), (b) and (c), but every public utility against which an assessment is made shall pay the same as provided in subsection (c). Any public utility making any such payment may, at any time within two years from the date of payment, sue the Commonwealth in an action at law to recover the amount paid, or any part thereof, upon the ground that the assessment was excessive, erroneous, unlawful, or invalid, in whole or in part, provided objections, as hereinbefore provided, were filed with the commission, and payment of the assessment was made under protest either as to all or part thereof. In any action for recovery of any payments made under this section, the claim-

Because we have improvidently allowed UPS to appeal the Commission's interlocutory order, we quash UPS's appeal for lack of any appellate jurisdiction.

### ORDER

AND NOW, this 15th day of August, 2007, the appeal filed by United Parcel Service in the above captioned case is hereby QUASHED.

ant shall be entitled to raise every relevant issue of law, but the findings of fact made by the commission, pursuant to this section, shall be *prima facie* evidence of the facts therein stated. Any records, books, data, documents, and memoranda relating to the expenses of the commission shall be admissible in evidence in any court and shall be *prima facie* evidence of the truth of their contents. If it is finally determined in any such action that all or any part of the assessment for which payment was made under protest was excessive, erroneous, unlawful, or invalid, the commission shall make a refund to the claimant out of the appropriation specified in section 511 as directed by the court.

66 Pa.C.S. § 510(d).